# PEOPLE *v.* JOHNSON

1. HOMICIDE—EVIDENCE—ADULTERY—STATE OF MIND.

   Evidence of adulterous relations between the defendant and the victim's spouse is, as a general proposition, admissible in a homicide case to show the state of mind of the defendant.

2. HOMICIDE—EVIDENCE—ADULTERY.

   Testimony that a year or two before defendant shot and killed his brother, defendant was observed engaged in sexual intercourse with the brother's wife was properly admitted in evidence where the defense was that the shooting was accidental and there was evidence which would justify the conclusion that the sexual relationship between defendant and his brother's wife continued until shortly before the shooting—the day before the shooting the victim had ordered his wife and defendant from his home, where defendant also lived, shortly after the shooting defendant was heard to say to the victim's wife, "you made me do this"—and the trial judge could properly conclude that the probative value of such evidence outweighed its prejudicial impact.

3. APPEAL AND ERROR—WITNESSES—IMPEACHMENT.

   Assignment of error was not properly preserved for appellate review in a criminal case where the people impeached the testimony of a witness by means of a prior inconsistent statement and defendant's trial lawyer specifically stated he had no objection to this line of inquiry.

4. HOMICIDE—INSTRUCTIONS TO JURY—REQUEST TO CHARGE.

   Instructions that the defense in a homicide case was that the shooting was accidental and that the jury should acquit the defendant if it found the shooting was accidental were not erroneous where more specific instructions were not requested.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 40 Am Jur 2d, Homicide §§ 274, 280.
[3] 5 Am Jur 2d, Appeal and Error § 553.
[4] 40 Am Jur 2d, Homicide § 514.

Appeal from Wayne, Nathan J. Kaufman, J. Submitted Division 1 December 12, 1969, at Detroit. (Docket No. 6,510.) Decided May 26, 1970.

Elijah Johnson was convicted of second-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley*, Attorney General, *Robert A. Derengoski*, Solicitor General, *William L. Cahalan*, Prosecuting Attorney, *Samuel J. Torina*, Chief Appellate Lawyer, and *Angelo A. Pentolino*, Assistant Prosecuting Attorney, for the people.

*Gerald David White*, for defendant on appeal.

Before: LESINSKI, C. J., and LEVIN and DANHOF, JJ.

LEVIN, J. Defendant Elijah Johnson appeals his conviction of murder of the second degree.[1]

On July 9, 1966, the defendant shot and killed his brother, Absolon Johnson. The defense was that the shooting was accidental.

At the trial a witness testified, over objection, that a year or two before the shooting she had observed the defendant and Cora Johnson, wife of the victim, engaged in sexual intercourse. On the facts of this case we find no error in the admission of this testimony.

In a homicide case evidence of adulterous relations between the accused person and the victim's spouse is, as a general proposition, admissible to show the state of mind of the accused.[2] Such evidence will,

---

[1] MCLA § 750.317 (Stat Ann 1954 Rev § 28.549).
[2] 2 Warren on Homicide, § 207, p 436; 40 Am Jur 2d, Homicide, § 280, pp 546, 547; *Templeton v. People* (1873), 27 Mich 501; *People v. Burkhart* (1911), 165 Mich 240.

however, be excluded where it relates to remote[3] or isolated[4] incidents.

The factors to be weighed in deciding whether such evidence should be admitted are discussed in a well-reasoned opinion, *State* v. *Flett* (1963), 234 Or 124 (380 P2d 634, 94 ALR2d 1082). There the defendant, the wife of the victim, was charged with second-degree murder. She claimed in defense that the killing was accidental, but was convicted of manslaughter. On appeal, the Oregon Supreme Court indicated that evidence of the defendant wife's recent marital infidelity (spending two nights the week of the killing with another man) might be admissible in the sound discretion of the court after weighing its tendency to prove an issue in dispute against its tendency "to produce passion and prejudice out of proportion to its probative value".[5] The conviction was reversed, however, because the people had been permitted to prove a more remote incident—that several months before the killing the defendant had spent the night in a motel with an unidentified man. The court observed:

"The reason for permitting the state to prove acts of marital infidelity is the supposition that such evidence may have some slight probative value. In a first-degree murder case, which this is not, such evidence is thought to be relevant to prove motive. Where the killing is not alleged to be a premeditated affair, but where ill will toward the deceased spouse may be an issue, the evidence is thought to be relevant to prove ill will. In this case, ill will was an issue. However, the connection between isolated acts of marital infidelity and the purposeful slaying

3 *People* v. *Randolph* (1922), 220 Mich 617, 619. See, also, *People* v. *Wright* (1904), 144 Cal 161 (77 P 877).
4 *Adams* v. *Commonwealth* (1938), 274 Ky 714 (120 SW2d 237).
5 See authorities collected in *People* v. *Hall* (LEVIN, J., *dissenting*) (1969), 19 Mich App 95, 102, nn 4 and 8. See, also, *People* v. *Oaks* (1970), 24 Mich App 7.

of a spouse is extremely tenuous in any case. Here the record reveals that excessive drinking and quarreling were routine weekend activities. There is no evidence that the hostility, if any, of one spouse toward the other had anything to do with marital fidelity. Under those circumstances, while it may not have been an abuse of discretion to permit the state to show the misconduct that occurred a day or two before the killing, it was clearly an abuse of discretion to let the district attorney roam out over the countryside with his proof of remote acts of indiscretion that could have had nothing to do with the issues the jury was called upon to decide."

In *Commonwealth* v. *Burke* (1959), 339 Mass 521 (159 NE2d 856, 77 ALR2d 451), evidence of a two-week affair between the defendant husband and another woman nearly seven months before the death of the defendant's wife was held to be too remote since this evidence was not connected with later events of a like nature. The court emphasized that there was nothing to show that the illicit affair had continued to a later period and said that where such evidence had been held admissible it appeared that the relationship was less remote in time.[6]

In the case now before us there is, contrary to the defendant's assertion, evidence that would justify the conclusion that the sexual relationship between the defendant and Cora Johnson continued to a date not long before the shooting. The defendant lived in

---

[6] The court cited and commented on its earlier decisions as follows (p 864):

"See *Commonwealth* v. *Howard* (1910), 205 Mass 128 (91 NE 397) (relationship continued to the time of wife's death); *Commonwealth* v. *Mercier* (1926), 257 Mass 353 (153 NE 834) (relationship continued until about three weeks before wife's death); *Commonwealth* v. *Bonomi* (1957), 335 Mass 327 (140 NE2d 140) (relationship continued until day wife disappeared). See also *Commonwealth* v. *Abbott* (1881), 130 Mass 472. We intend no suggestion that proof of hostility between the defendant and his wife in February and March would not have been competent. On the contrary, we think it would have been."

his brother's home. There was testimony that in May or June, 1966, one month before the shooting, the defendant said that Cora was pregnant and he thought the baby "might be his" and had taken her to a doctor. The day before the shooting the defendant's brother had ordered both his wife, Cora, and the defendant from his home. There was also testimony that shortly after the shooting the defendant was heard to say to Cora, "You made me do this."

It is true that there was no direct evidence that the victim was aware of his wife's infidelity or that the relationship between the defendant and Cora was a source of enmity between the brothers.[7] However, the state of the defendant's mind was of much greater relevance than the state of his brother's mind. The question before the jury was whether the shooting was intentional or accidental. On that question it was not an abuse of discretion for the trial judge to admit evidence tending to show an illicit relationship between the defendant and the victim's wife continuing until a short time before the charged offense.[8] The judge could properly conclude that the probative value of such evidence outweighs its prejudicial impact.

The other assignments of error were not properly preserved. The people impeached the testimony of a witness by means of a prior inconsistent statement; the defendant's trial lawyer specifically stated that he had no objection to this line of inquiry.[9]

---

[7] *Cf. State* v. *Needham* (1952), 235 NC 555 (71 SE2d 29), where there was evidence that the deceased had acquiesced in his wife's adultery.

[8] See *People* v. *Burkhart* (1911), 165 Mich 240, 242, where the Supreme Court emphasized that the illicit relations between the defendant and the victim's wife continued until the time of the shooting.

[9] The defendant's trial lawyer stated: "Your honor, if I may say this, it hardly matters to us. We are aware of the fact that he [the witness] has made inconsistent statements and, as a matter of fact, it is our intention to show that he has made some incon-

It is claimed that the judge's jury charge regarding the defense of accidental killing was incomplete. Although the defendant's trial lawyer expressed satisfaction with the charge, since the claimed defect concerns the principal issue in the case, we have read the entire charge to determine whether it adequately presented to the jury this disputed issue.[10] The judge informed the jury that the defense was that the shooting was accidental and that it should acquit the defendant if it found the shooting was accidental. More specific instructions not having been requested, there was no error.

Affirmed.

All concurred.

---

sistent statements whether [the assistant prosecuting attorney] does it or not."

[10] See *People v. Guillett* (1955), 342 Mich 1, 7; *People v. Liggett* (1967), 378 Mich 706, 714.