PEOPLE v FISHER

Docket No. 98903. Argued March 8, 1995 (Calendar No. 15). Decided
    August 9, 1995. Rehearing denied 450 Mich 1208.

Charles R. Fisher was convicted by a jury in the Wayne Circuit
    Court, Claudia House Morcom, J., of the first-degree murder of
    his wife. The conviction was set aside for alleged prosecutorial
    misconduct. On retrial, the defendant was again convicted by a
    jury, Thomas J. Foley, J. The Court of Appeals, DANHOF, C.J.,
    and CAVANAGH and W. R. BEASLEY, JJ., affirmed in an unpub-
    lished opinion per curiam (Docket No. 108857). The Supreme
    Court peremptorily reversed the conviction and remanded the
    case to the trial court, finding that the defendant had been
    denied a fair trial because hearsay evidence regarding the
    victim-wife's state of mind was admitted. 439 Mich 884 (1991).
    Before a third trial, the court, Thomas Roumell, J., granted the
    people's motion to introduce certain oral and written state-
    ments of the victim-wife that were relevant to the issue of
    motive and premeditation. The Court of Appeals, McDONALD,
    P.J., and D. E. HOLBROOK, JR., and MURPHY, JJ., denied leave to
    appeal and denied rehearing in an unpublished order (Docket
    No. 168977). The defendant appeals.

In an opinion by Justice WEAVER, joined by Justices BOYLE,
    RILEY, and MALLETT, the Supreme Court held:

The trial court did not err; admission of the decedent-wife's
    oral and written statements in accordance with the trial court's
    ruling was proper.

1. The trial court was acting within its power in ruling that
    the victim-wife's oral and written statements, relevant to mo-
    tive, premeditation, and deliberation would be admitted with
    limiting instructions. The power of a lower court on remand is
    to take such action as law and justice may require as long as it
    is not inconsistent with the judgment of the appellate court.
    Likewise, the doctrine of the law of the case has no application
    where a case is remanded without directions to the lower court.
    In such a case, the lower court would enjoy the same power as
    if it made the ruling itself.

2. Evidence that demonstrates an individual's state of mind
    is not precluded by the hearsay rule. Because, in this case,
    marital discord, motive, and premeditation are at issue, state-

ments of the victim-wife are admissible to show their effect on the defendant-husband. Likewise, her statements referring to subsequent plans may be admitted under MRE 803(3) as statements of intent, plan, or mental feeling.

3. Evidence offered against a party, by its nature, is prejudicial. What is pivotal is whether its probative value is substantially outweighed by unfair prejudice. Relevant evidence is any fact that is of consequence to the determination of an action. Where, as in this case, the proofs are circumstantial and the only witness is the accused, evidence of the extensive discord in the defendant's marriage is highly relevant and more probative than prejudicial. Whether the evidence provides a motive is an issue of weight, not admissibility.

Affirmed.

Justice CAVANAGH, joined by Chief Justice BRICKLEY and Justice LEVIN, dissenting, stated that it is clear that all evidence relating to the victim's state of mind was inadmissible because the relevance of the evidence was substantially outweighed by its prejudice. The rule articulated in *People v White,* 401 Mich 482 (1977), is clear. Evidence whose admissibility is not precluded by the hearsay rule still should be excluded if its probative value is substantially outweighed by the potential for unfair prejudice. As in *White,* neither self-defense, accidental death, suicide, nor any other defense was raised. There, as here, the defense did not claim that anything done by the deceased exculpated the defendant or excused, justified, or mitigated his guilt. Thus, the challenged evidence is not probative of, and only remotely related to, any material issue and should be excluded. It is apparent that not only is the evidence extremely prejudicial and unnecessary, it is equally cumulative. Moreover, the evidence created by the defendant does not suffer from the defect that it is full of accusations, and hence there is no chance of unfair prejudice. The jury can see what he said and draw its own conclusions, as opposed to having those conclusions supplied by the victim.

Justice LEVIN, joined by Justice CAVANAGH, dissenting, stated that the failure of the majority to insist on compliance with its directive that the prosecutor be as specific as possible in identifying and discussing the testimony and documents he seeks to have admitted has made it difficult, almost impossible, to address the specific evidence that will be admitted at trial. The trial judge, in effect, has been given carte blanche on remand for the third trial to decide in the exercise of his discretion the specific evidence to be admitted and excluded. The Supreme Court should withhold decision in this case until the prosecutor complies with this Court's directive.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief, Research, Training and Appeals, and *Joseph A. Puleo,* Assistant Prosecuting Attorney, for the people.

*Kenneth M. Mogill* for the defendant.

WEAVER, J. Defendant Charles Ray Fisher was twice convicted by a jury of first-degree murder of his wife. MCL 750.316; MSA 28.548. Both convictions were set aside, the first by the trial judge for alleged prosecutorial misconduct. The second conviction came before this Court following a decision by the Court of Appeals that none of the eleven issues raised by defendant required reversal. This Court decided defendant had been denied a fair trial because of the admission of hearsay evidence regarding the victim-wife's state of mind, peremptorily reversed his conviction, and remanded the case to the trial court for a third trial.[1]

Before a third trial, the prosecutor moved for permission to introduce certain oral and written statements of the victim-wife that were relevant to the issue of motive and premeditation. The trial judge granted the motion.[2] The Court of Appeals denied defendant's application for leave to appeal,

[1] 439 Mich 884 (1991).

[2] The trial judge ruled:

> The court will arrange for a mutually agreed upon time and place and date for the purpose of developing a list of such type of data and evidence to be used at trial. The list should as much as possible be made up of oral or written statements by the victims which were known to or by the Defendant. Such are or should be non-hearsay in nature and in a factual content. The court specifically will avoid any effort to allow the admission of the entire contents of all oral and written statements but will consider those oral and written statements which are especially relevant to the issues of motive and the elements of premeditation and deliberation.

and denied rehearing. This Court granted leave to appeal solely on the issue whether the trial court erred in granting the people's motion to admit the decedent-wife's oral and written statements with conditions. We affirm the trial court's ruling and hold that the trial court did not err, and that the admission of evidence in accordance with the trial court's ruling was proper.

I

LAW OF THE CASE

Defendant argues that this Court rejected in toto the victim-wife's oral and written statements in its earlier ruling.[3] Defendant suggests that in our previous peremptory reversal we intended to close the door to any evidence of the decedent-wife's state of mind. Such an argument misconstrues our order. We stated "defendant-appellant was denied a fair trial by the admission of hearsay evidence regarding the victim's state of mind," and despite limiting instructions the prejudice of the evidence outweighed its probative value.[4]

In order to reach the issue whether the trial court erred in granting the people's motion to admit the decedent-wife's oral and written statements with conditions, we must first determine whether or not the "law of the case" doctrine applies. The doctrine as generally stated provides:[5]

[I]f an appellate court has passed on a legal question and remanded the case for further proceedings, the legal questions thus determined by the appellate court will not be differently deter-

[3] See n 1.

[4] Id., n 1 supra at 884.

[5] CAF Investment Co v Saginaw Twp, 410 Mich 428, 454; 302 NW2d 164 (1981) (citations omitted).

mined on a subsequent appeal in the same case where the facts remain materially the same.

Defendant maintains that our earlier peremptory reversal left no opening for the admission of any evidence, and thus is the law of the case.[6]

In the peremptory reversal order we stated:

> [We have] concluded that the defendant-appellant was denied a fair trial by the admission of *hearsay evidence regarding the victim's state of mind.* . . . While limiting instructions were given in this case, we believe that under the circumstances there was such a great likelihood of prejudice that the evidence should have been excluded because the relevance of the evidence was substantially outweighed by the prejudice. MRE 403. [Emphasis added.][7]

In light of the order and in preparation for the third trial of defendant, the people moved to admit only "relevant, nonhearsay or hearsay excepted evidence that was not substantially more prejudicial than probative, with the further understanding that the trial court give the jury a strongly worded cautionary instruction during preliminary instructions, during trial, and during the court's final charge to the jury . . . ."

This evidence was broken down into nine categories.

1. Statements by decedent-wife regarding her feelings for the defendant.
2. Statements by decedent-wife regarding her

---

[6] Defendant's sole authority for this proposition is *Johnson v White,* 430 Mich 47; 420 NW2d 87 (1988). *Johnson* is inapposite. The issue in *Johnson* was whether the appellate court had authority to readdress an issue that was not raised before us and that we did not direct be considered on remand. We held it did not. *Id.* at 49.

[7] Note 1 *supra* at 884-885.

feelings about the state of her marriage to the defendant.

3. Statements by decedent-wife about or relationships with men other than the defendant.

4. Statements by decedent-wife about her desire to pursue an education and career in transcultural nursing.

5. Statements about decedent-wife's intent to enter Wayne State University's program in transcultural nursing.

6. Statements about decedent-wife's desire for independence from the defendant.

7. Statements about decedent-wife's insistence on visiting her cousin/lover in Germany.

8. Statements about decedent-wife's intentions to divorce or separate from the defendant during the marriage.

9. Statements made by decedent-wife that directly contradict statements made by the defendant about her to others.

The trial judge ruled that statements, both oral and written, that were shown to be relevant to the issue of motive and the elements of premeditation and deliberation would be admitted with limiting instructions. In granting the motion, the trial judge adopted the people's recommendations, and further ruled that a list of nonhearsay evidence would be prepared by the parties, that objections to entry of the evidence could be made in front of the jury, but that the evidence would be admitted.

Though defendant argues to the contrary, the trial court was acting within its power in so ruling. As we stated in *Sokel v Nickoli,* 356 Mich 460, 464; 97 NW2d 1 (1959), "The power of the lower court on remand is to take such action as law and

justice may require so long as it is not inconsistent with the judgment of the appellate court."[8] Likewise, the doctrine of the law of the case has no application where a case is remanded without directions to the lower court; in such a case the lower court would enjoy the same power as if it made the ruling itself. *Lyon v Ingham Circuit Judge,* 37 Mich 377 (1877); *Garwood v Burton,* 274 Mich 219, 222; 264 NW 349 (1936).

Though clearly this Court felt some evidence of the victim's state of mind was inadmissible hearsay, more prejudicial than probative, and not cured by limiting instructions, defendant's position that all of the proffered evidence in categories 1 to 9 was meant to be excluded is not justified. To sanction such a result would not further the causes of justice. As stated in *Taines v Munson,* 42 Mich App 256, 259-260; 201 NW2d 685 (1972):

> To straightjacket proceedings subsequent to a decision on a case by an appellate court by making assumptions regarding the disposition of arguments which the appellate court did not see fit to consider is not, in our opinion, the wisest of policies.

Leave to appeal was granted in this case to resolve the apparent ambiguity surrounding this Court's previous order.

In granting leave, we likewise asked the parties to "be as specific as possible in identifying and discussing the testimony and documents they contend should be admitted into or excluded from evidence, as the case may be." 445 Mich 945 (1994). This the parties did not do.[9]

---

[8] See also *Meyering v Russell,* 85 Mich App 547; 272 NW2d 131 (1978).

[9] As noted in the oral argument:

II

Within the nine discrete categories of evidence sought to be admitted are literally hundreds of proposed exhibits, many of which were admitted during the second trial of sixteen days' duration. The trial judge stated that the parties should develop a list of oral or written statements made by the victim that were known to the defendant. The court ruled that these statements were not hearsay and that it would admit those statements that are especially relevant to the issues of motive and the elements of premeditation and deliberation. The trial court also ruled that it would also admit certain statements made by the victim that were not known to the defendant:

> The people's intent to present certain other material not known to the Defendant but which can be properly considered to be admissible as non-hearsay circumstantial evidence as to the existence and extent of marital discord which is admissible as proof of a motive for Defendant to kill his wife will also be permitted at the trial. That material described on page 29, Sec. II and thereafter will be allowed it being the impression of the court that they are not violative of the Supreme Court's ruling.[2]

---

[1] On page 24 of the people's motion, the people have itemized 9 types of statements they will seek to introduce at trial—the court sees no problem with allowing them—even over objections by the defense—but an exchange between the parties will be had.

[2] Non-hearsay circumstantial evidence as to the existence and extent of discord shall be admitted when in the form of state-

---

*Mr. Puleo:* I think part of the problem is the parties have not sat down and actually compiled a list and have the judge go over those—okay, this is going to come in—this is not.

*Justice Boyle:* Okay, so we get to deal with it conceptually as the judge did?

*Mr. Puleo:* That I think is part of the problem.

ments that the victim made reasonably in point of time before her demise—this specifically relates to the purpose of establishing a motive for defendant to want to kill his wife. (Here a factor to be kept in mind is that this kind of testimony is not being offered for the proof [sic] of the matter asserted but to establish the state of mind of the person who performed the thing or made this statement.)

---

We agree with the conclusion reached by the trial court. It is well accepted that evidence that demonstrates an individual's state of mind will not be precluded by the hearsay rule.[10] Several legal scholars have commented on the nonhearsay use of such evidence:

Wherever an utterance is offered [into] evidence [for] the *state of mind* which ensued *in another person* in consequence of the utterance, it is obvious that no. assertive or testimonial use is sought to be made of it, and the utterance is therefore admissible, so far as the hearsay rule is concerned. [6 Wigmore, Evidence (Chadbourn rev), § 1789, p 314. Emphasis added.]

Likewise, in 4 Weinstein, Evidence, ¶ 801(c)[01], pp 801-94 to 801-96:

An utterance or a writing may be admitted to show the effect on the hearer or reader when this effect is relevant. The policies underlying the hearsay rule do not apply because the utterance is not

---

[10] The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

Then existing mental, emotional or physical condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will. [MRE 803(3).]

being offered to prove the truth or falsity of the matter asserted.

Specifically, statements by murder victims regarding their plans and feelings have been admitted as hearsay exceptions in a number of jurisdictions. In *United States v Donley*, 878 F2d 735, 737-739 (CA 3, 1989), cert den 494 US 1058 (1990), a statement by the victim's wife that she intended to move out of the apartment and separate from the defendant-husband was found admissible to show marital discord and motive. Likewise, in *Whitmire v State*, 789 SW2d 366 (Tex App, 1990), statements of the decedent-husband that he wanted to end the marriage with the defendant-wife were found admissible. See also *United States v Hartmann*, 958 F2d 774, 782 (CA 7, 1992), in which statements made by the victim-husband about the "dismal state of his marriage" to the defendant-wife, his removal of her as beneficiary from his life insurance policy, and statements of his fear of being killed by the defendant-wife and her codefendant lover all were found admissible under a state of mind exception to the hearsay rule.

In the case at hand, marital discord, motive, and premeditation are all at issue. Thus, the statements of the victim-wife are admissible to show the effect they had on the defendant-husband. This testimony will not offend the hearsay rule because it does not constitute hearsay.

The victim-wife's statements that were not known to the defendant about her plans to visit Germany to be with her lover and her plans to divorce the defendant upon her return are hearsay. They are admissible, however, because they satisfy the exception to the hearsay rule for "statement[s] of the declarant's then existing . . . intent, plan . . . [or] mental feeling . . . ." MRE 803(3).

The victim, five days before her fatal assault, wrote in her journal:

> The way I'm feeling right now is that I want to go [to Germany]. . . . I am afraid if I allow my self to let my defenses down with Charles [the defendant] he will manipulate me into forgetting about the importance of my career, traveling, having children I will resent in the future. He manipulated me into marriage, . . . now by telling my father about my plan to go to Europe. I am sick of this manipulation of me. I want to get away from it.

## III

The remaining issue is whether the probative value of the proffered testimony is substantially outweighed by any unfair prejudice. Obviously, evidence offered against a party, by its very nature is prejudicial, otherwise there would be no point in presenting it. The pivotal consideration is whether the probative value of the testimony is substantially outweighed by unfair prejudice. MRE 403.[11] As discussed in *People v Goree,* 132 Mich App 693, 702-703; 349 NW2d 220 (1984), courts must balance these two competing principles:

> We are quick to dispense with the recurrent notion that evidence should be excluded under MRE 403 because it simply "prejudices" the cause of the objecting party. Obviously, evidence is offered by an advocate for the always clear, if seldom stated, purpose of "prejudicing" the adverse

---

[11] Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

party. Recognizing this, the Supreme Court in adopting MRE 403 identified only unfair prejudice as a factor to be weighed against probative value. This unfair prejudice refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock.

There is no rule requiring the prosecution to use only the least prejudicial evidence per se to establish facts at issue. Even if the defendant were to stipulate all the facts concerning the relationship between his deceased wife and himself, and to the best of our knowledge he has not offered to do so, the decision whether to admit this evidence would remain within the discretion of the trial court. See *People v Hall,* 83 Mich App 632, 640; 269 NW2d 476 (1978); *People v Green,* 74 Mich App 351, 357-358; 253 NW2d 763 (1977).

Thus it is necessary to weigh the probativeness or relevance of the evidence. Specifically, relevant evidence is any fact that is of consequence to the determination of the action. *People v McKinney,* 410 Mich 413; 301 NW2d 824 (1981).[12] The purpose of admitting relevant evidence is to provide the trier of fact with as much useful information as possible. *People v Hampton,* 407 Mich 354; 285 NW2d 284 (1979).

Hence, the question becomes whether the statements made by the victim-wife and known to the defendant provide any facts of consequence, or in other words raise an issue of motive for the defendant to kill his wife. If they do, then they are

---

[12] "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. [MRE 401.]

relevant with regard to the issues of motive, premeditation, and deliberation as well.

In cases such as the instant case, in which the proofs are circumstantial and the only witness is the accused, evidence of motive would be highly relevant. *People v Shaw,* 9 Mich App 558, 566; 157 NW2d 811 (1968), aff'd 383 Mich 69; 173 NW2d 217 (1970).[13] In fact, numerous prior cases have upheld the admissibility of evidence showing marital discord as a motive for murder, or as circumstantial evidence of premeditation and deliberation.[14] We do not need to restate those holdings, but simply reaffirm them. Since the proffered evidence would illustrate the extensive marital discord in defendant's marriage and thus provide a motive, we believe that it is highly relevant and more probative than prejudicial.

Evidence of marital discord is relevant to motive just as evidence of marital harmony would be relevant to show lack of motive. Discord or lack of discord in an ongoing relationship obviously has some tendency to make the existence of a fact in controversy more or less probable—whether or not the accused ended the relationship as it is alleged he did. Whether the marital discord is of a type that would provide a motive for murder is an issue of weight, not admissibility.

IV

In our peremptory reversal order, we excluded

[13] See also *People v Nash,* 110 Mich App 428; 313 NW2d 307 (1981), aff'd in part 418 Mich 196; 341 NW2d 439 (1983), evidence of motive is always relevant in a murder case; *People v Mihalko,* 306 Mich 356; 10 NW2d 914 (1943).

[14] *People v Rotar,* 137 Mich App 540; 357 NW2d 885 (1984); *People v Johnson,* 24 Mich App 1; 179 NW2d 658 (1970); *People v Burkhart,* 165 Mich 240; 130 NW 597 (1911); *People v Zabijak,* 285 Mich 164; 280 NW 149 (1938); *People v Lewis,* 95 Mich App 513; 291 NW2d 100 (1980); *People v Nash,* n 13 *supra; People v Furman,* 158 Mich App 302; 404 NW2d 246 (1987).

"hearsay evidence regarding the victim's state of mind" where its "relevance . . . was substantially outweighed by the prejudice."[15] The people properly interpreted this order to mean that any of decedent-wife's statements that expressed fear of the defendant, or that depicted significant misconduct of the defendant tending to show him to be a "bad person," were inadmissible. However, this order did not preclude from admission the vast majority of the remaining proffered evidence.[16] We agree with this reasoning and would find the admission of evidence in accordance with the trial court ruling proper.

BOYLE, RILEY, and MALLETT, JJ., concurred with WEAVER, J.

CAVANAGH, J. I dissent because I believe that we need look no further than our prior order to resolve this case. On November 25, 1991, the Court issued the following:

> In lieu of granting leave to appeal, the judgments of the Court of Appeals and of the Recorder's Court are reversed, and the case is remanded to the Recorder's Court for a new trial. MCR 7.302(F)(1). The Supreme Court has concluded that the defendant-appellant was denied a fair trial by the admission of hearsay evidence regarding the victim's state of mind.

---

[15] Note 1 *supra* at 884, 885.

[16] Assessment of the effect of particular evidence, and whether it is cumulative, distracting, or otherwise substantially more prejudicial than probative, is a contextual evaluation of the life cycle of a given proceeding. An appellate court can rarely determine in an interlocutory appeal that unfair prejudice will require exclusion of a specific piece of relevant evidence. "The probative value of . . . evidence and its true potential for prejudice is often unclear until the proofs are actually presented." *People v VanderVliet,* 444 Mich 52, 90; 508 NW2d 114 (1993). The trial court will have to rule on defense objections to specific statements brought under MRE 403 in light of the proofs admitted at that point.

\* \* \*

> While limiting instructions were given in this
> case, we believe that under the circumstances
> there was such a great likelihood of prejudice that
> the evidence should have been excluded because
> the relevance of the evidence was substantially
> outweighed by the prejudice. MRE 403. [439 Mich
> 884, 884-885 (1991). Quotation omitted.]

Justices BOYLE and RILEY dissented from the order. The prosecutor moved for, and was denied, reconsideration. Justice BOYLE dissented again: the "Court's failure to differentiate between discrete classes of evidence are foreshadowed by the prosecution's claim . . . that it does not know what 'evidence' the Court is talking about and the defendant's reply that since all of the evidence was 'of the same character' it was all improperly admitted." *Id.* at 886.

In light of Justice BOYLE's "vigorous" dissent, I think it clear that the Court believed that all evidence relating to the victim's state of mind was inadmissible because the relevance of the evidence was substantially outweighed by the prejudice. The Court obviously felt that the order was clear enough because it did not respond to the concerns raised by Justice BOYLE. Accordingly, I believe that our prior ruling prohibits any evidence generated by the victim regarding the victim's state of mind, whether offered to show its effect on the listener or for the truth of the matter asserted, because its probativeness is substantially outweighed by prejudice.[1]

---

[1] The majority holds that our prior order precluded " 'hearsay evidence regarding the victim's state of mind' where its 'relevance . . . was substantially outweighed by the prejudice.' " *Ante* at 454. This paraphrasing is inaccurate because it suggests that only that hearsay evidence of the victim's state of mind that is substantially more prejudicial than probative be excluded. We, however,

As the majority points out, the evidence in controversy can be characterized as nonhearsay because it may be offered to show its effect on the listener and not for a prohibited hearsay purpose. Nevertheless, there is a substantial danger that these out-of-court statements will in fact be used by the jury for an improper purpose: to establish the truth of the matter asserted. Our extensive citation of *People v White,* 401 Mich 482; 257 NW2d 912 (1977),[2] demonstrates that this is the very danger that the Court sought to avoid.

When a victim's state of mind is in issue in a homicide case it is usually because the defense asserted is either self-defense as justification for the killing, suicide or accidental death. When such claims are made by the defendant it would be highly relevant for the prosecution to show that at or near the time of the decedent's death he said something which tends to prove circumstantially that he feared the defendant, as suggesting it was unlikely that he was an aggressor; as tending to disprove a suicidal bent; or as tending to disprove accidental death. Where such claims are made, a number of courts have allowed the admission of a victim's statements of fear of the defendant as constituting such circumstantial proof. . . .

Here, however, there are no such claims by the defendant. The people's theory was felony murder. The appellant's theory was that he did not commit the crime. Self-defense, accidental death or suicide were not raised, nor were any analogous defenses. Although appellant may have in some sense raised the issue of Greene's state of mind, by suggesting that the two were friendly, it was not claimed that anything said or done by Greene exculpated appellant or excused, justified or mitigated his alleged

excluded all hearsay evidence of the victim's state of mind, whether excepted from the hearsay rule or not, *because* its prejudicial effect substantially outweighed its probativeness.

[2] A case that the majority completely fails to discuss, let alone acknowledge.

guilt. Greene's state of mind was, therefore, only remotely and collaterally related to the real issues in the case.

On the other hand, the statement attributed to the declarant, Greene, that he had an argument with White and was frightened of him tended to relate forcefully to the appellant's character and the acts attributed to him, matters which were very prominently "in issue" in the case. The danger is obvious: that the jury would accept Greene's statement "as somehow reflecting on defendant's state of mind rather than the victim's—i.e., as a true indication of the defendant's intentions, actions or culpability." *United States v Brown* [160 US App DC 190] 198; 490 F2d [758] 766 [(1973)].

It is against this possibility that the need for a limiting instruction is vital. Where the state of mind evidence either explicitly or implicitly includes other factual matters, a limiting instruction should be given to preserve the hearsay policy which would exclude the evidence if offered against appellant to prove the truth of those underlying facts. See *United States v Brown, supra,* and cases cited therein. *Even where state of mind bears substantial relevance to the issues in a case, these additional factual matters may present so great a likelihood of prejudice that the evidence should be excluded.* [439 Mich 884-885. Citations omitted and emphasis added.]

The rule articulated in *White* is clear: Evidence whose admissibility is not precluded by the hearsay rule still should be excluded if its probative value is substantially outweighed by the potential for unfair prejudice.

Therefore, even if one concludes that the contested nonhearsay evidence[3] was not covered by our prior ruling, this case is still controlled by *White.* As in *White,* neither self-defense, acciden-

---

[3] Offered to show the effect on the listener and not for the truth of the matter asserted.

tal death, suicide, nor any other defense was raised. There, as here, the defense did not claim that anything done by the deceased exculpated the defendant or excused, justified, or mitigated his guilt. Thus, the challenged evidence is not probative of,[4] and only remotely related to, any material issue and should be excluded.

Even a brief review of the proposed evidence shows that it is filled with nothing but contempt and disdain of the defendant. Compounding the problem is that the victim is dead. Thus, the defendant in this case is faced with a multitude of unchallengeable denunciations by the victim. The prejudice could not be more clear.

The use of the decedent's diary and letters is not only unfairly prejudicial but unnecessary. In fact, the prosecution actually argues that there is independent evidence to support each statement it wishes to admit. This independent evidence consists primarily of the defendant's written statements. In effect, the prosecution concedes that there are other sources available to prove the assertions made in the victim's journal. Why then does it so desperately desire to admit this evidence? If it is not for facts contained in the evidence, it must be for the victim's disparaging commentary regarding the defendant.

It is apparent that not only is the evidence in question extremely prejudicial and unnecessary, it is equally cumulative. As voluminous as the victim's diary is, there is an equally voluminous paper trail created by the defendant in his correspondence with the victim's parents and others. There is plenty of evidence from which a juror

---

[4] I note that the majority seems to equate relevance with probativeness. *Ante* at 452. While this is certainly a unique evidentiary concept, I question the wisdom of collapsing these two completely different concepts into one.

could conclude that there was a significant break-down of the marital relationship. Moreover, the evidence created by the defendant does not suffer from the defect that it is full of accusations and hence there is no chance of unfair prejudice. The jury can see what he said and draw its own conclusions, as opposed to having those conclusions supplied by the victim.

Therefore, I would reverse the decision of the trial court insofar as it appears to admit some statements consisting of the victim's commentary on the character and conduct of the defendant.

BRICKLEY, C.J., and LEVIN, J., concurred with CAVANAGH, J.

LEVIN, J. (*dissenting*). I have signed without qualification Justice CAVANAGH's dissenting opinion.

I write separately to respond to some of the discussion of case law in the majority opinion, and to express my dismay that the Court would speak so definitively, although the prosecutor has not, as "directed" by this Court's order granting leave to appeal, been "specific" in identifying the testimony and documents he contends should be admitted into evidence on retrial.[1]

---

[1] This Court's order granting leave to appeal stated:

> The question is limited to whether the trial court erred in its September 20, 1993, opinion and order granting the people's motion to admit decedent's oral and written statements with conditions. *The parties are directed to be as specific as possible in identifying and discussing the testimony and documents they contend should be admitted into or excluded from evidence, as the case may be.* Leave to appeal is denied in respect to the defendant's search and seizure and double jeopardy issues, which were not affected by the Court's order of November 25, 1991. The January 24, 1991, decision of the Court of Appeals is the law of this case in respect to these matters. [445 Mich 945 (1994). Emphasis added.]

I

Charles Ray Fisher was convicted at two jury trials of first-degree murder[2] of his wife, Ella Maria Fisher. Following the first conviction, the trial judge found prosecutorial misconduct and granted a new trial. The Court of Appeals affirmed the second conviction.[3] This Court reversed by order,[4] and remanded for a third trial, stating that Fisher "was denied a fair trial by the admission of hearsay evidence regarding the victim's state of mind."

This Court said, citing and quoting at length from *People v White,* 401 Mich 482, 504-506; 257 NW2d 912 (1977), that usually, when a victim's state of mind is an issue in a murder case, it is because self-defense has been asserted or it is claimed that the death was accidental or suicide. Evidence that the victim feared the defendant would make it less likely that he was an aggressor, and the victim's state of mind might tend to negative suicide or accident.

In the instant case, Fisher claimed that he and his wife were assaulted in their home. There is no claim of self-defense, or suggestion of suicide or accidental death.

In *White,* this Court, in reversing and remanding for a new trial, said that the statements of the deceased victim that he had an argument with White and was frightened of him tended to relate to White's "*character* and the acts attributed to him" (emphasis added), and there was the danger that, as set forth in *United States v Brown,* 160 US App DC 190, 198; 490 F2d 758 (1973), the jury would accept the victim's statement "as somehow

2 MCL 750.316; MSA 28.548. .

3 Unpublished per curiam opinion, issued January 24, 1991 (Docket No. 108857).

4 439 Mich 884 (1991).

reflecting on *defendant's* state of mind rather than the victim's—i.e., as a true indication of the defendant's intentions, actions or culpability." (Emphasis in original.) This Court added:

> Even where state of mind bears substantial relevance to the issues in a case, these *additional factual matters* may present so great a likelihood of prejudice that the evidence should be excluded. [401 Mich 505-506. Emphasis added.]

This Court similarly concluded, in its order entered following the second trial in the instant case, that "under the circumstances there was such a great likelihood of prejudice that the evidence should have been excluded because the relevance of the evidence was substantially outweighed by the prejudice."[5]

## II

This case was returned to the trial court for a third trial. The prosecutor moved to admit "some, but not all" of Ella Maria Fisher's statements, claiming that this Court's order did not include all her statements. The judge, acknowledging this Court's order,[6] agreed with the prosecutor, and

---

[5] Two justices dissented. 439 Mich 885. One justice vigorously dissented from the order denying reconsideration. 439 Mich 886.

[6] The judge said:

> This court is cognizant of the Supreme Court's peremptory slip decision in which it reversed the trial court and the Court of Appeals holdings as to certain evidence received for the purpose of establishing the state of mind of the deceased as to her husband the Defendant herein. However, it is crystal clear and undeniable that the Supreme Court's order was in a sort of cart blanc [sic] makeup which was lacking in detail, intent or explanation as to whether all of the evidence in its entirety or whether conceivably certain portions or parts of it only were acceptable while other parts were not so as to result in an unavoidable conclusion that the Supreme Court's peremptory

said that he will require that a "specific list" of the evidence to be admitted be prepared[7] that

slip decision, unwittingly and surely unintentionally, resulted in absolutely no help or assistance to the litigants as to a future course of procedure in situations as is here present. As Justice BOYLE stated in her dissent:

"The order fails to inform the trial court, the three Court of Appeals judges on the panel whose decision is being reversed, the attorneys, the Defendant, the victim's family, the bench and bar and the public at large of the facts and reasons for this court's reversal of a jury verdict delivered after 16 days of trial."

The court will arrange for a mutually agreed upon time and place and date for the purpose of developing a list of such type of data and evidence to be used at trial. The list should as much as possible be made up of oral or written statements by the victims which were known to or by the Defendant. Such are or should be non-hearsay in nature and in a factual content. The court specifically will avoid any effort to allow the admission of the entire contents of all oral and written statements but will consider those oral and written statements which are especially relevant to the issues of motive and the elements of premeditation and deliberation.

The people's intent to present certain other material not known to the Defendant but which can be properly considered to be admissible as non-hearsay circumstantial evidence as to the existence and extent of marital discord which is admissible as proof of a motive for Defendant to kill his wife will also be permitted at the trial. That material described on page 29, Sec. II [of the people's motion] and thereafter will be allowed it being the impression of the court that they are not violative of the Supreme Court's ruling.[2]

---

[2] Non-hearsay circumstantial evidence as to the existence and extent of discord shall be admitted when in the form of statements that the victim made reasonably in point of time before her demise—this specifically relates to the purpose of establishing a motive for defendant to want to kill his wife. (Here a factor to be kept in mind is that this kind of testimony is not being offered for the proof of the matter asserted but to establish the state of mind of the person who performed the thing or made this statement.)

---

[7] The judge said:

On page 24 of the people's motion, the people have itemized 9 types of statements they will seek to introduce at trial—the court sees no problem with allowing them—even over objec-

"should as much as possible" be made up of state-
ments known to or by Fisher that are "non-
hearsay in nature and in a factual content." The
judge added that other material not known to
Fisher concerning the marital discord will also be
permitted.

The specific list had not been prepared before
this Court granted leave to appeal. For that rea-
son, this Court, in granting leave to appeal, said:

> The parties are directed to be *as specific as
> possible* in identifying and discussing the testi-
> mony and documents they contend should be ad-
> mitted into or excluded from evidence, as the case
> may be. [Emphasis added.][8]

The majority acknowledges that the parties "did
not do" so.[9]

As set forth in the trial judge's opinion and in
the majority opinion, the prosecutor identified in
his pretrial motion "nine discrete categories of
evidence sought to be admitted," and there "are
literally *hundreds of proposed exhibits,* many of
which were admitted during the second trial of
sixteen days' duration."[10] (Emphasis added.)

### III

Absent the "specific list" contemplated by the
judge's order or compliance by the prosecutor with
this Court's "direct[ive] to be as specific as possible
in identifying and discussing the testimony and

---

tions by the defense—but an exchange between the parties will
be had.

[8] See n 1.

[9] *Ante,* p 447.

[10] *Ante,* p 448. See also *ante,* pp 445-446, where the nine categories
are set forth.

documents" he seeks to have admitted, this Court cannot adequately address the legal issues dealt with in the majority opinion.

The failure of this Court to insist on compliance with its directive that the prosecutor be as specific as possible has made it difficult, almost impossible, to address the specific evidence that will be admitted at trial. Fisher has offered in his appendix a typed version of Ella Maria Fisher's handwritten diary. The prosecutor has included photocopies of her handwritten diary, and photocopies of her and Fisher's handwritten letters.

The justices do not have the time to read through that mass of handwritten material without specificity from the prosecutor concerning the items that belong in each of the nine discrete categories, and without specificity concerning the portions of each item he will ask the judge on remand to admit in evidence.

Because there is no "specific list" and the prosecutor has not been "as specific as possible" in identifying the testimony and documents, the majority does not and cannot speak specifically concerning the "literally hundreds of proposed exhibits" that might be offered at the third trial.

The judge has in effect been given by the majority carte blanche[11] on remand for the third trial to decide in the exercise of his discretion the specific evidence to be admitted and excluded.[12] The new majority has indicated its impatience with the

[11] The judge, in commenting on this Court's order of reversal following the second trial (see n 4), said that the order was "in a sort of cart blanc [sic] makeup which was lacking in detail."

[12] Today's decision, which concludes that the Court's previous order is not the law of the case, will be regarded as the law of the case—even though the majority cannot now possibly pass upon each exercise of judicial discretion in deciding which portions of the diary and letters will be admitted—when application is made for leave to appeal following a conviction after the third trial.

forthcoming third trial. There will be even less patience for a fourth trial. This means that it is unlikely that even an abuse of discretion in admitting evidence at the third trial will be corrected.

As set forth in the majority opinion, many of the literally hundreds of proposed exhibits were admitted at the second trial. As previously related, following this Court's order of reversal, the prosecutor asserted, and the trial judge agreed, that some of those exhibits were covered by this Court's order, and others, apparently the bulk according to the prosecutor and judge, were not. Here again, the prosecutor has not been specific; neither was the trial judge, nor is the majority in this Court, in identifying the exhibits admitted at the second trial that they regard to have been unambiguously covered by this Court's order of reversal, with the result that neither Fisher nor his counsel, nor the undersigned[13] know what specific effect is still required to be given on remand for the third trial to this Court's order of reversal.

This Court should withhold decision in this case until the prosecutor complies with this Court's directive that he be as specific as possible. It has been ruled that Fisher was twice denied a fair trial. He should not be denied one fair trial—at the third trial—by a rush to decision. This Court should avoid opining in generalizations until the prosecutor is "as specific as possible." This Court should show respect for its own orders by requiring compliance, and should not be surprised that its orders are ignored if it makes no effort to enforce them.

IV

The majority cites a number of decisions of the

---

[13] Nor the bench and bar.

Court of Appeals[14] for a proposition that is undisputed and with which I agree: evidence of marital discord is admissible to show motive in a homicide case.[15] The issue here, however, is whether hearsay statements of the deceased are admissible on the theory that the mental state of the deceased tends to show marital discord.

The majority states that "statements by murder victims regarding their plans and feelings have been admitted as hearsay exceptions in a number of jurisdictions."[16] These cases are distinguishable from this case and are not in point.

In *United States v Donley*, 878 F2d 735 (CA 3, 1989), a statement by a homicide victim that she intended to leave her husband, the defendant, was found to have been admissible to prove marital discord as a motive for the homicide. In *Donley*, however, the defendant raised, analogous to *White*, a heat-of-passion defense, thus rendering the victim's state of mind material to the case.

In *Whitmire v State*, 789 SW2d 366 (Tex App, 1990), the homicide victim's statements that he wanted to get out of the marriage to the defendant were found admissible. However, the defendant raised a claim of self-defense, thus making, as the *White* Court said, the victim's state of mind relevant and material to the case.

In *United States v Hartmann*, 958 F2d 774 (CA 7, 1992), a homicide victim's statements about his dismal marriage, evidence that he removed her as a beneficiary from his life insurance policy, and

[14] *People v Rotar*, 137 Mich App 540; 357 NW2d 885 (1984); *People v Lewis*, 95 Mich App 513; 291 NW2d 100 (1980); *People v Nash*, 110 Mich App 428; 313 NW2d 307 (1981). See also *People v Johnson*, 24 Mich App 1; 179 NW2d 658 (1970); *People v Burkhart*, 165 Mich 240; 130 NW 597 (1911); *People v Zabijak*, 285 Mich 164; 280 NW 149 (1938).

[15] *Ante*, pp 452-453.

[16] *Ante*, p 450.

his statements that he feared his wife and her
lover were going to kill him were found admissible
under the state of mind exception to the hearsay
rule. *Hartmann* was an insurance fraud case, not
a homicide case. Additionally, defendants made no
objection to the admission of those statements at
trial, unlike this case. The United States Court of
Appeals for the Seventh Circuit employed a plain
error standard of review that required "even more
deference to the district court's ruling" than the
usual abuse of discretion standard used in review-
ing admissibility issues.[17] Because Fisher objected
to the use of all the evidence that is the subject of
this interlocutory appeal, *Hartmann* provides no
guidance to this Court in ruling in this case.

The majority cites no authority contrary to this
Court's decision in *White* and its order in the
instant case excluding statements of the deceased
offered to show the state of mind of the deceased.

On the question whether the probative value of
the evidence sought to be admitted might be sub-
stantially outweighed by unfair prejudice to
Fisher, the majority cites[18] a long passage from
*People v Goree,* 132 Mich App 693, 702-703; 349
NW2d 220 (1984), observing that most evidence
sought to be admitted against an adversary will be
prejudicial.

The majority fails to add that later in *Goree,*
which concerned the possible swaying of jury opin-
ion by a witness' impressive credentials, the Court
of Appeals noted that any possible prejudice to
defendant that might inure from the number of
letters following the witness' name could be less-
ened by "proper cross-examination, argument, in-
structions by the court and the jury's common

---

[17] *Hartmann* at 783.
[18] *Ante,* pp 451-452.

sense" in "distinguish[ing] between the message and the messenger."[19]

In this case, there will be no cross-examination or proper argument based thereon because the "witness," Ella Maria Mercado Fisher, is dead. Absent a means of communicating with those who have passed from this world, *Goree* fails to provide guidance in this case.

CAVANAGH, J., concurred with LEVIN, J.

---

[19] *Goree* at 703.