*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CHAD LEE REDDER,

Defendant-Appellant.

UNPUBLISHED
December 22, 2020

No. 349200
Kent Circuit Court
LC No. 18-005188-FC

Before: FORT HOOD, P.J., and SAWYER and SERVITTO, JJ.

PER CURIAM.

Defendant, Chad Lee Redder, appeals as of right his jury trial convictions of three counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(2)(b). The trial court sentenced defendant to 25 to 50 years' imprisonment on each count, to be served concurrently. We affirm.

This case arose out of defendant's sexual touching of his two stepdaughters, JH and KH. KH testified that defendant "put his fingers inside of [her] vagina"; "licked" her vagina on multiple occasions; continually asked her to "set her vagina on his face"; and told her to put his penis in her mouth, which she did. JH testified that defendant would tickle her, lift up her shirt, and touch her breast. Defendant also would reach into her pants and rub under her underwear line. This occurred "very often," "once a week, once every other week." JH additionally testified that defendant rubbed a "silver bullet" vibrator up and down her neck and by her clitoris four or five times.

On appeal, defendant argues that the prosecution's comments about the Larry Nassar case during its closing argument to the jury constituted prosecutorial misconduct, which deprived him of a fair trial. We disagree.

We review preserved issues of prosecutorial misconduct, such as this one, "de novo to determine if the defendant was denied a fair and impartial trial." *People v Thomas*, 260 Mich App 450, 453; 678 NW2d 631 (2004). A "preserved, constitutional error is generally not a ground for reversal if the prosecutor proves that the error was harmless beyond a reasonable doubt." *People v Miller*, 482 Mich 540, 559; 759 NW2d 850 (2008).

-1-

Prosecutorial comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial. *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009). "Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008). "They are generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Id*. "Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007).

In this case, during its closing argument to the jury, defense counsel argued that defendant would not have had time to assault JM or KH because they lived in such a busy household, and there was always someone around. Defense counsel stated that defendant

> leaves before the kids go to school. He gets home around dinnertime, for the most part. Wife fixes dinner, the kids are around, the house is full, and they go to bed. Are there exceptions to that rule? Of course, there are. We all have our common sense, and we know what our daily lives look like and how they take us.
>
> But he's not left alone with them all the time isolated. There's really not much of an opportunity at all to isolate somebody like [KH]—over fifty times? I mean. She was hard pressed to describe with any particularity any of the details or dates or anything beyond the allegations that—well, what about the other stuff? When did that happen? I don't know. How do I defend that? It's nearly impossible.

Defense counsel also argued that the victims' testimonies regarding the timing of defendant's assaults was not supported by "logic or common sense," and explained,

> [y]ou know, there's no suggestion that, well, he locked the door, we were behind closed doors, nobody was there. I mean, they even said sometimes this happened with the brothers in the house, or even [KH] says this happened with my mom sitting right next to me and my brother in the chair right there. Does that sound plausible? That doesn't sound plausible to me. I don't see how that can happen.

Defense counsel repeated that "one of the claims [made by KH] is that [defendant] touched her under the blanket with my mom there and with—right by my side and my brother there. I told you I don't know how that can happen." Counsel reiterated that "based on [defendant's] work schedule, lack of opportunity, the fact that family is in a house with like a 1500 square foot footprint, and it's got six people in it. Not a lot of opportunity for this to happen with his schedule and the kids' and family's schedule." Counsel continued, stating that

> [f]or years this supposedly went on and nobody ever stumbled in, heard anything, or got wind of it in that small of a cramped house like that? I would think that you probably would. I can't close my bedroom door to get away from my boys without one of them immediately coming and knocking, Hey, dad, what are you doing? I mean, it's just not reality. If this was going on, I submit somebody would have found out about it. You would have told—it would be nice if there was some contemporaneous report of it.

Subsequently, during its rebuttal closing argument to the jury, the prosecution stated, in pertinent part:

> Of course [defendant] had time to be with [the children]. This is not a long, drawn out thing. He wasn't wining and dining them, putting on Barry White and romancing them. This is an assault. It's quick. 'I'm getting what I want.' It does not take long.

> And the best example of that now is Larry Nassar. He had 332 victims, and he was victimizing the majority in an examination room with the parent in the room.

Defendant objected to the prosecution's comment about Nassar, stating, "I'm not sure that's relevant to this case. I think that's introducing something that's really prejudicial." The trial court disagreed with defendant, stating, "[w]ell, in response, I would say that it's probably a reasonable response to—this is in the form of rebuttal. And I think it's fairly direct rebuttal of some of the points that you raised during your closing arguments."

The prosecution continued its rebuttal, and stated that Nassar

> did it with the parents in the examination room with him and the victim. So, don't tell me you can't find an opportunity to do this with people in the house or people around or people out for even a few minutes.

> And to suggest that [defendant] worked every single day Monday through Friday, never had a day off, he's in the construction business. There was never bad weather that he didn't work? There was never a time you just decided to take the day off because you had four kids and your wife is gone?

In this case, the prosecution's reference to Nassar did not imply, as defendant argues, that defendant's actions equated with that of Nassar's or that he acted in a similar manner. Instead, the prosecutor used the Nassar case (which was initially referred to first by JM during her testimony when she stated, "[s]o I had been watching the Larry Nassar trial to watch sentencing and all that kind of stuff") to refute defense counsel's closing argument to the jury that, on the basis of defendant's "schedule and the kids' and family's schedule" defendant did not have the opportunity for the abuse to occur. The prosecutor used the Nassar case to show that it was entirely plausible for defendant to commit the abuse and inappropriate touching while other members of the household were in the home or present in the same room. We hold that the prosecution was properly arguing the evidence and reasonable inferences as it related to its theory of the case. See *Unger*, 278 Mich App at 236.

Furthermore, the prosecution's reference to Nassar was harmless. Taken in context, the prosecutor's statement that Nasser "had 332 victims, and he was victimizing the majority in an examination room with the parent in the room," was a proper response to a defense argument. See *People v Duncan*, 402 Mich 1, 16; 260 NW2d 58 (1977) (stating that "[w]e examine the prosecutor's remarks in the context in which they were made"). As the trial court alluded, the prosecution's reference was in "direct rebuttal of some of the points that" defense counsel raised during its closing arguments to the jury. Although this statement did refer to a high-profile individual, the prosecution need not use the least prejudicial evidence available to establish a fact

in issue. *People v Fisher*, 449 Mich 441, 452; 537 NW2d 577 (1995). And, any alleged "seed planted in the mind of the jurors" by this reference that created inflamed "emotions or passions," was done by JM during her testimony, not the prosecution's brief mentions of the Nassar case.

Even if we were to conclude that the trial court erred by allowing the prosecution's reference to Nassar, defendant was not prejudiced because of both KH's and JM's extremely detailed testimonies of what had occurred. Additionally, the trial court gave the cautionary instruction that "[t]he lawyers' statements and arguments are not evidence. They are only meant to help you understand the evidence and each side's legal theories. You should only accept things the lawyers say that are supported by the evidence or by your own common sense and general knowledge." Jurors are presumed to follow their instructions. *Unger*, 278 Mich App at 235.

Accordingly, we conclude that defendant was not denied a fair and impartial trial, that the prosecution's reference to the Nassar case was in "direct rebuttal of some of the points that" defense counsel raised during its closing arguments to the jury, and that any alleged error, had there been one, "was harmless beyond a reasonable doubt." See *Miller*, 482 Mich at 559.

Affirmed.

/s/ Karen M. Fort Hood
/s/ David H. Sawyer
/s/ Deborah A. Servitto