# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TOMMY LEE BENNETT,

        Defendant-Appellant.

UNPUBLISHED
August 16, 2016

No.  327417
Wayne Circuit Court
LC No.  14-004430-FC

Before:  MURPHY, P.J., and STEPHENS and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of first-degree criminal sexual conduct (CSC 1), MCL 750.520b(1)(b)(*ii*), and one count of second-degree criminal sexual conduct (CSC 2), MCL 750.520c(1)(b)(*ii*).  The trial court sentenced defendant, as a second habitual offender, MCL 769.10, to 15 to 30 years' imprisonment for the CSC 1 convictions, and 6 to 15 years' imprisonment for the CSC 2 conviction.  We affirm defendant's convictions, but vacate defendant's sentences and remand for resentencing.

This case arises from allegations of child sexual abuse brought voluntarily by defendant's daughter, TB.  Although TB later recanted her story and explained at defendant's trial that she made up the sexual abuse in an effort to punish her overly strict father, the trial court allowed testimony from defendant's two stepdaughters—LH and KH—which indicated that defendant perpetrated unreported and uncharged acts of child sexual abuse on each of them at earlier stages of their lives.  Defendant was ultimately convicted by a jury of abuse perpetrated on TB.

## I. ADMISSIBILITY OF OTHER ACTS TESTIMONY

On appeal, defendant argues that the trial court abused its discretion when it permitted the introduction of his stepdaughters' testimony because (1) the prosecutor did not have a proper non-propensity purpose for admitting the other acts evidence, (2) the stepdaughters' intended testimony was not relevant to any issue before the jury, and (3) the trial court erred when it neglected to balance the probative value of the evidence against its highly prejudicial effect.  We disagree.

This Court reviews a trial court's decision regarding the admissibility of other acts evidence for an abuse of discretion.  *People v Dobek*, 274 Mich App 58, 84–85; 732 NW2d 546 (2007).  A trial court abuses its discretion when its decision falls "outside the range of reasonable

-1-

and principled outcomes." *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010). "Because an abuse of discretion standard contemplates that there may be more than a single correct outcome, there is no abuse of discretion where the evidentiary question is a close one." *People v Smith*, 282 Mich App 191, 194; 772 NW2d 428 (2009). To be admissible, evidence of other crimes, wrongs, or acts: (1) must be offered for a proper purpose, and (2) must be relevant, and (3) the probative value of the evidence may not be substantially outweighed by the danger of unfair prejudice. *People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993), amended by 445 Mich 1205 (1994).

## A. UNDER MRE 404(B)

Defendant first argues that the trial court erred when it allowed the admission of the challenged other acts testimony under MRE 404(b) because the prosecutor used the testimony for improper propensity purposes. We treat MRE 404(b) and MCL 768.27a as separate and independent bases for the admission of other acts evidence because the prosecutor sought admission of the stepdaughters' testimony pursuant to both MRE 404(b) and MCL 768.27a. The prosecution argued that the bad acts testimony, in addition to establishing criminal propensity, was evidence of a common method of "grooming" victims employed by defendant. The trial court initially only considered admission under MRE 404(b), and admitted the testimony as relevant and not overly prejudicial. Later, and only after the prosecutor's specific request, the trial court also, allowed the admission of the stepdaughters' testimony under MCL 768.27a. We find that either the court rule or the statute provides an appropriate basis for admission of the stepdaughters' testimony.

Although the prosecutor did not specifically raise the argument at the admissibility hearing, it is evident from his argument at the hearing that he thought that the stepdaughters' testimony presented evidence of the defendant's behavioral patterns that were part of a "common scheme, plan, or system" for grooming and sexually assaulting minor females. On appeal, the prosecution explicitly offers that purpose for admission under MRE 404(b), and further argues that the testimony was admissible under the court rule to support the credibility of TB's initial allegations. MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, *scheme, plan, or system in doing an act*, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case. [Emphasis added.]

The prosecutor's attempt to support the other acts testimony as relevant to bolster the credibility of TB's initial allegations fails. The Michigan Supreme Court has explicitly held that "evidence of sexual acts between the defendant and persons other than the complainant is not relevant to bolster the complainant's credibility because the acts are not part of the principal transaction." *People v Sabin*, 463 Mich 43, 69-70; 614 NW2d 888 (2000). However, the stepdaughters' testimony was admissible, as the prosecutor argues, as evidence of a common plan. The Supreme Court held in *Sabin*, 463 Mich at 63-64, that "evidence of similar

-2-

misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *Id*. In *Sabin*, the Court considered a situation much like that presented here, and concluded that the trial court did not abuse its discretion when it allowed the admission of evidence regarding alleged abuse of the defendant's stepdaughter that "shared sufficient common features to infer a plan, scheme or system" of sexual abuse extending to the defendant's daughter, the complainant in that case. The Court explained:

> The charged and uncharged acts contained common features beyond mere commission of acts of sexual abuse. Defendant and the alleged victims had a father-daughter relationship. The victims were of similar age at the time of the abuse. Defendant allegedly played on his daughters' fear of breaking up the family to silence them. One could infer from these common features that defendant had a system that involved taking advantage of the parent-child relationship, particularly his control over his daughters, to perpetrate abuse. [*Id*. at 67.]

Here, as in *Sabin*, the charged acts involving TB and the uncharged acts involving KH and LH contain common features beyond the act of sexual abuse itself. Defendant and the three alleged victims had a father-daughter relationship. KH and LH testified that their abuse, like the abuse initially complained of by TB, occurred when they reached the age of about 12 or 13 years old. The progression of the assaults against KH and LH began with inappropriate touching at a younger age and then moved on to oral sex and ultimately vaginal penetration as was reported by TB before her recantation. In all three cases, the abuse occurred in the family home while others were at home, and the abuse stopped when each girl was about 15 years old. KH and LH both testified that defendant had threatened harm to them, their sisters, and their mother if they told anyone about the abuse. Before TB recanted her initial allegations, she too claimed that she was afraid to tell anyone about defendant's abuse because defendant had threatened her. These similarities support the inference that defendant acted with a plan to abuse his status as a father-figure, to groom his victims at an early age in order to move on to increasingly intimate acts of sexual abuse, and to exploit their fear of harm to themselves and their family to cover up his abusive acts.

It is true that the stepdaughters' testimony also supports an inference of criminal propensity. However, "[e]vidence relevant to a noncharacter purpose is admissible under MRE 404(b) even if it also reflects on a defendant's character." *People v Mardlin*, 487 Mich 609, 615; 790 NW2d 607 (2010). In this case, the stepdaughters' testimony was relevant to show that defendant acted pursuant to a common plan, scheme, or system, and was therefore admissible under MRE 404(b) despite its tendency to illustrate a propensity to commit acts of child sexual abuse.

## B. UNDER MCL 768.27A

Defendant also argues that the evidence was not properly admitted under MCL 768.27a because, under that statute, the evidence must be relevant to an issue that the jury must decide. We find that the stepdaughters' testimony would also be admissible under the statute.

The language of MCL 768.27a(1) states that "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on *any matter to which it is relevant*." (Emphasis added.) Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. The facts supported by such evidence need not be the elements of the charged crimes. *Sabin*, 463 Mich at 57.

The credibility of witnesses, and the complainant in particular, is a matter "of consequence" to be assessed by the jury. See *People v Mills*, 450 Mich 61, 72; 537 NW2d 909, modified by 450 Mich 1212 (1995). In this case, TB's credibility was clearly at issue, and the challenged evidence tended to support her initial allegations over her trial testimony. The testimony, as noted before, also supports propensity to offend in a like manner, "a defendant's propensity to commit a crime makes it more probable that he committed the charged offense." *Watkins*, 491 Mich at 470. Although MRE 404(b) expressly precludes the admission of propensity evidence, the Michigan Supreme Court has held that the specific language of MCL 768.27a trumps the general language of MRE 404(b) to allow the admission of propensity evidence in limited cases. *Id.* at 470-471. MCL 768.27a therefore creates an exception to MRE 404(b) in cases presenting a charge of sexual misconduct against a minor. *Id. at* 471.

The statute explicitly allows the presentation of evidence "that the defendant committed another listed offense against a minor" in a criminal case where "the defendant is accused of committing a listed offense against a minor." MCL 768.27a(1). TB was a minor at the time of trial, and both KH and LH were minors at the time of defendant's alleged sexual misconduct against them. MCL 768.27a(2)(b). CSC 1 and CSC 2, the crimes for which defendant stood trial and the crimes supported by the testimony of LH and KH, are listed offenses. MCL 768.27a(2)(a); MCL 28.722(j); MCL 28.722(w)(*iv*). Therefore, the testimony was admissible under MCL 768.27a.

## C. UNDER MRE 403

Finally, defendant argues that the trial court erred when it failed to consider whether the other acts testimony was admissible under the balancing test of MRE 403, which permits the exclusion of otherwise admissible evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." The balancing requirement applies to both MRE 404(b) and MCL 768.27a. *Watkins*, 491 Mich at 481; *VanderVliet*, 444 Mich at 74-75. As defendant has alleged, the record fails to indicate that the trial court conducted an MRE 403 analysis in connection with the admission of evidence under either MRE 404(b) or MCL 768.27a. The trial court merely offered the conclusory statement that the challenged evidence "falls very clearly in favor of admission under 403." The Supreme Court instructed trial courts to engage in the MRE 403 balancing analysis with respect to each separate piece of evidence offered under MCL 768.27a. *Watkins*, 491 Mich at 489. However, the trial court's failure to conduct such an analysis is harmless error if, in fact, MRE 403 did not require the exclusion of the other acts evidence. See *id.* at 491. We find that it did not.

Evidence offered against a party is "by its very nature . . . prejudicial, otherwise there would be no point in presenting it." *People v Fisher*, 449 Mich 441, 451; 537 NW2d 577 (1995). "[U]nfair prejudice refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *People v Goree*, 132 Mich App 693, 702-703; 349 NW2d 220 (1984). "Evidence is unfairly prejudicial when 'there exists a danger that *marginally* probative evidence will be given undue or preemptive weight by the jury.' " *People v Kowalski*, 492 Mich 106, 137; 821 NW2d 14 (2012), citing *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998). Our Supreme Court has identified a list of factors "that may lead a court to exclude" evidence "under MRE 403 as overly prejudicial," including "(1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony." *Watkins*, 491 Mich at 487-488 (footnote omitted). When the other acts evidence is admitted pursuant to MCL 768.27a, courts must weigh the propensity inference in favor of the probative side of the equation. *Id*. at 487.

As discussed previously, the challenged evidence was probative of defendant's propensity to commit similar crimes; a permissible purpose pursuant to MCL 768.27a. It was also highly probative of which version of the facts given by TB was credible. The probative value is not substantially diminished by the passage of between five and ten years between offenses due to the similarity of the defendant's relationships with each victim, and the pattern of behavior in each case. We cannot say that the probative value was substantially outweighed by the prejudicial value in this case. As to the inconsistencies within and between the testimony of LH and KH, they related not to the offense characteristics but to details of the offense, and the reliability and credibility of witnesses is a matter properly left for the jury. *People v Hill*, 257 Mich App 126, 141; 667 NW2d 78 (2003). Finally, in light of TB's conflicting testimony, the evidence was necessary to help the jury determine which of TB's versions of events was more accurate and credible.

It is also worth noting that the trial court instructed the jury on how to approach evidence of alleged prior bad acts immediately before LH and KH testified, explaining:

> If you believe this evidence, you must be very careful only to consider it for the purpose -- for certain purposes.

> You may only think about whether this evidence tends to show that the defendant had a reason to commit the crime, that the defendant specifically meant to commit criminal sexual conduct, that the defendant acted purposely; that is, not by accident. That the defendant used a plan, system, or characteristic scheme he has used before or since.

> You must not consider this evidence for any other purpose other than to show a propensity to commit the crime.

This instruction, as well as the standard instructions regarding evidence, witness credibility, inconsistent statements, and prior bad acts, weighs against a finding of unfair prejudice. See *People v Magyar*, 250 Mich App 408, 416; 648 NW2d 215 (2002) (observing that "a limiting instruction such as this one that cautions the jury not to infer that a defendant had a bad character and acted in accordance with that character can protect the defendant's right to a fair trial"). Although the stepdaughters' testimony was undoubtedly prejudicial, the trial court in this case was careful to ensure that the jurors understood its limited purpose. Jurors are presumed to follow their instructions. *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). There is no reason to believe they did not do so here. Because the probative value of the stepdaughters' testimony was not substantially outweighed by the danger of unfair prejudice, the trial court did not abuse its discretion when it permitted its presentation at defendant's trial.

## II. EFFECTIVE ASSISTANCE OF COUNSEL

Next, defendant argues that he was deprived of the effective assistance of counsel when his trial counsel failed to object to the trial court's improper assessment of OV 11 at sentencing. Here, we agree.

Defendant failed to preserve his ineffective assistance of counsel claim by raising it in a motion for a new trial or a *Ginther*[1] hearing in the lower court. This Court's review of unpreserved ineffective assistance of counsel claims is limited to mistakes apparent on the record. *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). Whether a person has been denied effective assistance of counsel is a mixed question of law and fact. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). "A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008).

To establish ineffective assistance, the defendant must show that "(1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness and (2) there is a reasonable probability that defense counsel's deficient performance prejudiced the defendant." *People v Heft*, 299 Mich App 69, 80-81; 829 NW2d 266 (2012). In order to show deficient performance, a defendant must show that counsel's performance was "outside the wide range of professionally competent assistance." *Strickland v Washington*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Defense counsel is afforded wide latitude on matters of trial strategy. *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008). A defendant is prejudiced if there is a reasonable probability that, "but for defense counsel's errors, the result of the proceeding would have been different." *Heft*, 299 Mich App at 81.

In this case, defendant claims that defense counsel's failure to object to the trial court's assessment of OV 11 constituted ineffective assistance of counsel. However, "[f]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Therefore, in this case, the effectiveness of defense counsel's assistance depends on whether the trial court's

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

assessment of OV 11 was proper. "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). Whether the factual determinations were sufficient to score OV 11 is a question this Court reviews de novo. *Id*. See *People v Steanhouse*, 313 Mich App 1, 18; ___ NW2d ___ (2015) (holding that because scoring the offense variables remains relevant after *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), the standards of review traditionally applied to the trial court's scoring of the offense variables are still appropriate).

OV 11 is "criminal sexual penetration," and should be assessed at 50 points only when "[t]wo or more sexual penetrations occurred." MCL 777.41(1)(a). OV 11 must be assessed at 25 points if only [o]ne criminal sexual penetration occurred," and zero points "if [n]o criminal sexual penetration occurred." MCL 777.41(1)(b)-(c). Importantly, the sentencing guidelines statute clearly states that a trial court must "not score points for the 1 penetration that forms the basis of a first- or third-degree criminal sexual conduct offense." MCL 777.41(2)(c). Additionally, MCL 777.41(2)(b) directs a trial court to score only those sexual penetrations "of the victim by the offender arising out of the sentencing offense."

The trial court clearly erred when it assessed OV 11 at 50 points. Defendant was convicted of two counts of CSC 1 involving sexual penetration and one count of CSC 2 for sexual conduct not involving penetration. Because the sentencing guidelines statute clearly states that the penetration forming the basis of at least one of defendant's CSC 1 convictions must not be scored, neither sexual penetration could be scored for OV 11 because both of them form the basis of a sentencing offense. As our Supreme Court explained in *People v Johnson*, 474 Mich 96, 103 n 2; 712 NW2d 703 (2006):

> The penetration that formed the basis of [the] defendant's first offense "aris[es] out of the [first] sentencing offense." The penetration that formed the basis of [the] defendant's second offense "aris[es] out of the [second] sentencing offense." However, the penetration that formed the basis of the first offense cannot be used for scoring the first offense, and the penetration that formed the basis of the second offense cannot be used for scoring the second offense. This is because MCL 777.41(2)(c) prevents the court from scoring points "for the 1 penetration that forms the basis of a first- or third-degree criminal sexual conduct offense." While the precise meaning of the language in MCL 777.41(2)(c) is not at issue in this case, it is clear that each criminal sexual penetration that forms the basis of its own sentencing offense cannot be scored for purposes of that particular sentencing offense.

Further, in *Johnson*, the Court construed the phrase "arising out of," contained in MCL 777.41(2)(b) to mean "[s]omething that . . . springs from or results from something else, [and] has a connective relationship, a cause and effect relationship, of more than an incidental sort with the event out of which it has arisen." *Id*. at 101. According to the *Johnson* Court, "there [must] be such a relationship between the penetrations at issue and the sentencing offenses." *Id*. The standard requires more than the mere fact that the penetrations involved the same defendant and the same victim. See *id*. at 101-102. Penetrations are properly scored when they "occur[ ] at the same place, under the same set of circumstances, and during the same

-7-

course of conduct." *Id.* at 100, citing *People v Mutchie*, 251 Mich App 273, 276; 650 NW2d 733 (2002).

In this case, defendant was convicted of two counts of CSC 1—one count for each alleged sexual penetration. There is no evidence of any other incidences of sexual penetration, or that one or more sexual penetrations occurred concurrently with either of the charged offenses. Although the two incidences for which defendant was convicted involved the same victim and the same defendant, they did not occur during the same course of conduct. It cannot be said that either penetration had more than an incidental relationship with the other, or that one penetration was the result of the other. Here, as in *Johnson*, because the two sexual penetrations did not "arise out of" each other, the trial court erred when it scored OV 11 at any more than zero.[2]

The trial court's erroneous assessment of OV 11 had a substantial effect on defendant's sentencing guidelines range. The trial court assessed the guidelines only for defendant's CSC 1 conviction. CSC 1 is a Class A offense. MCL 777.16y. Defendant's total OV score of 70 included the trial court's assessment of 50 points for OV 11, and placed defendant within the cell of the sentencing grid for OV Level IV. After a reduction of 50 points for the trial court's improper assessment of OV 11, defendant's total OV score is properly adjusted to 20 points. Defendant's uncontested PRV score of 22 and a total OV score of 20 points places defendant within the cell of the sentencing grid for OV Level II, and brings his sentence range from 108 to 225 months down to 51 to 106 months. MCL 777.62.[3]

Defense counsel failed to object to the trial court's erroneous assessment of OV 11. Indeed, at sentencing, defense counsel acquiesced to the trial court's assessment of OV 11, a decision that clearly fell below an objective standard of reasonableness. A reasonably competent attorney would have, at the very least, read the sentencing guidelines statute and discovered that the one penetration forming the basis for a sentencing offense could not be scored for purposes of OV 11. Defendant's sentencing guidelines range should have been 51 to 106 months, rather than 108 to 225 months. Defense counsel's failure to argue the proper assessment of sentencing guidelines also satisfies the prejudice prong of the ineffective assistance of counsel test. *Glover v United States*, 531 US 198, 199-200; 121 S Ct 696; 148 L Ed 2d 604 (2001).

---

[2]Defendant has posited that a score of 25 points was appropriate for OV 11. We find no support for such a score in the record, as there is no evidence that multiple penetrations arose out of the sentencing offense. See *Johnson*, 474 Mich at 100-101. Further, multiple penetrations that do not arise out of the sentencing offense may be scored under OV 12 or OV 13. See *id.* at 102 n 3. The trial court should thus consider whether, if OV 11 is appropriately scored at zero, the evidence presented at resentencing supports scoring points under either OV 12 or OV 13.

[3] Even if the score for OV 11 were reduced to 25 points, it would place defendant within the cell of the sentencing grid for OV Level III, and would reduce his sentence range from 108 to 225 months down to 81 to 168 months. MCL 777.62. For the reasons stated in this opinion, resentencing would therefore still be required. See *People v Francisco*, 474 Mich 82, 89; 711 NW2d 44 (2006).

The prosecutor argues that defendant could not have suffered prejudice in light of the Supreme Court's decision in *Lockridge*, 498 Mich 358, to render the sentencing guidelines advisory only. According to the prosecutor, the sentencing guidelines are now irrelevant and the trial court's sentence should stand merely because it was "reasonable in light of the facts." This argument rests on an erroneous interpretation of the *Lockridge* opinion, in which the Court clearly explained:

> [A] guidelines minimum sentence range calculated [under the previously mandatory guidelines] is advisory only and . . . sentences that depart from that threshold are to be reviewed by appellate courts for reasonableness. To preserve as much as possible the legislative intent in enacting the guidelines, however, we hold that a sentencing court must determine the applicable guidelines range and take it into account when imposing a sentence. [*Id*. at 365 (citation omitted).]

The *Lockridge* Court also clearly indicated that its' holding "does nothing to undercut the requirement that the highest number of points possible *must* be assessed for all OVs, whether using judge-found facts or not." *Id*. at 392 n 28. Thus, not only did the *Lockridge* Court direct sentencing courts to continue calculating sentencing guidelines ranges for use as an advisory tool, it mandated accurate calculation of the guidelines. See also *Steanhouse*, 313 Mich App at 18 (holding that "given the continued relevance to the Michigan sentencing scheme of scoring variables, the standards of review traditionally applied to the trial court's scoring of the variables remain viable after *Lockridge*.") It is only when the trial judge chooses to depart from an accurately scored sentencing guidelines range that the question of "reasonableness" becomes relevant. *Lockridge*, 498 Mich at 365. Here, the trial judge did not indicate that it was making an upward departure from the sentencing guidelines. It simply sentenced defendant within the range calculated upon an erroneous assessment of defendant's total OV score. Whether or not the prosecutor thinks defendant's sentence was "reasonable" does not lessen the prejudice suffered by defendant at having a sentence range calculated at more than twice what is appropriate under the Legislature's prescribed sentencing guidelines.

When an ineffective assistance of counsel claim is based on errors made at sentencing, the appropriate remedy is a remand for resentencing on the basis of the proper sentencing guidelines range. See *People v Whitfield*, 214 Mich App 348, 354; 543 NW2d 347 (1995) (explaining that if ineffective assistance of counsel is established, the remedy must be tailored to the injury suffered). We therefore vacate defendant's sentence and remand to the trial court for resentencing. We do not retain jurisdiction.

/s/ William B. Murphy
/s/ Cynthia Diane Stephens
/s/ Mark T. Boonstra