C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

SHAWNN TEKALU MAYBERRY,

      Defendant-Appellant.

UNPUBLISHED
April 18, 2017

No. 331178
Kent Circuit Court
LC No. 14-007173-FC

Before: BECKERING, P.J., and MARKEY and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals by right his conviction of armed robbery, MCL 750.529. We affirm.

At 2:43 a.m. on July 8, 2014, a man carrying a gun and wearing a nylon mask, black hoodie, dark pants, and light gloves entered a shell gas station at 2600 East Beltline in Grand Rapids. The gas station was empty except for the clerk who was cleaning the bathroom. The man gave the clerk a bag and ordered her to go to the cash register and empty it into the bag. The clerk walked over to the register, and the man ducked behind the counter next to her. Shortly thereafter, a customer walked into the gas station. The clerk quickly emptied out the remaining contents of the cash register and handed the bag to the man, who took the bag and fled. The clerk locked the door behind him and called 911. Todd Wuis, a canine officer with the Grand Rapids Police Department (GRPD), responded with his tracking dog, Boris. Boris tracked the man's scent to a parking lot. Officer Wuis thought it likely that the man had gotten into a car and that was why Boris could no longer track his scent.

Six days later, on July 14, 2014, at 6:12 a.m., a Shell gas station in Norton Shores was robbed in a similar fashion to the one at 2600 East Beltline: the robber entered the gas station with a gun and wearing a mask, gloves, and a black hoodie over his head. The robber walked up to where the clerk was, ordered the clerk to open the register and give him the money, went behind the register, grabbed some cigarettes, and put the money and cigarettes into a backpack. While the robber was leaving, the clerk pulled a gun out from behind the counter and shot at the robber. The robber quickly ran out the door and into a waiting vehicle, later identified as a 2010-2014 Hyundai Sonata. While fleeing, the suspect lost a shoe.

Detective Kyle Neher with the Norton Shores Police Department was assigned to investigate the July 14 robbery. After details of the investigation were reported in the media, an Ottawa County Sheriff's deputy contacted Detective Neher. The deputy reported to Detective

Neher that at 4:24 a.m. on July 14, she stopped a 2013 black Hyundai Sonata with license plate number 459KXE. The car's occupants, defendant and Elamin Muhammad, told the deputy that they intended to meet some women in Muskegon.

After hearing that a similar robbery had occurred in Grand Rapids, Detective Neher contacted Detective Chris Postma of the GRPD to see what information he had on defendant, Muhammad, and the license plate number of their vehicle. Detective Postma ran the license plate through the Automatic License Plate Reader (ALPR), which is a database of vehicle locations based on license plate number collected by mounted cameras on select police cruisers throughout Grand Rapids. The ALPR indicated that a vehicle with license plate number 459KXE was observed within one mile of the East Beltline gas station at 2:47 a.m. on July 8, 2014. According to an employee from Enterprise Rent-a-Car, defendant rented a 2013 Hyundai Sonanta with license plate number 459KXE from July 5, 2014, until July 14, 2014.

Detective Tim DeVries of the GRPD was assigned to investigate the July 8 robbery of the gas station on East Beltline and coordinated his investigation with Detective Neher. DeVries and Neher drafted affidavits to obtain search warrants. A subsequent search of defendant's vehicle revealed a black hoodie, light gloves, and a black nylon do-rag. A search of defendant's phone revealed a text conversation between defendant and Muhammad that occurred from July 12, 2014, through July 13, 2014, that seemed to indicate that the two were planning to do something that required a gun. Defendant was eventually charged and convicted of the July 8 robbery.

On appeal, defendant first challenges the trial court's allowing admission into evidence of various other acts under MRE 404(b). First, defendant contends that the trial court abused its discretion by allowing evidence of defendant's suspected involvement in a 2005 string of armed robberies. "To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Defendant objected to the admission of the 2005 evidence, so this issue is preserved.

"This Court reviews a trial court's evidentiary ruling for an abuse of discretion." *People v Benton*, 294 Mich App 191, 195; 817 NW2d 599 (2011). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013). This Court reviews de novo any preliminary questions of law surrounding the admission of evidence, such as the interpretation of a rule of evidence. *Id*. at 723. "A preserved error in the admission of evidence does not warrant reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013) (citation and quotation marks omitted).

MRE 404(b)(1) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other

crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Whether other-acts evidence is admissible under MRE 404(b), involves the following factors:

First, the prosecutor must offer the "prior bad acts" evidence under something other than a character or propensity theory. Second, the evidence must be relevant under MRE 402, as enforced through MRE 104(b). Third, the probative value of the evidence must not be substantially outweighed by unfair prejudice under MRE 403. Finally, the trial court, upon request, may provide a limiting instruction under MRE 105. [*People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004), citing *People v VanderVliet*, 444 Mich 52, 74-75; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994) (quotation marks omitted).]

In regard to the first factor, "[w]here the only relevance of the proposed evidence is to show the defendant's character or the defendant's propensity to commit the crime, the evidence must be excluded." *Id*. at 510. The evidence showed that in 2005 defendant was a suspect in a string of armed robberies in which a group of people would enter and rob stores wearing stocking caps, masks, hooded sweatshirts, and gloves. Officers investigating those cases had stopped defendant while he was driving a rental car. During a search of the car, officers found two handguns, a mask, gloves, and dark clothing matching what the robbers wore. The prosecution offered this evidence to show a common scheme in which defendant would use a rental car to drive to a store to commit armed robbery while wearing dark clothes and a mask. On its face, this is a proper purpose under MRE 404(b)(1).

With respect to the second factor, "[r]elevance is a relationship between the evidence and a material fact at issue that must be demonstrated by reasonable inferences that make a material fact at issue more probable or less probable than it would be without the evidence." *People v Crawford*, 458 Mich 376, 387; 582 NW2d 785 (1998). As such, "evidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *People v Sabin (After Remand)*, 463 Mich 43, 63; 614 NW2d 888, 899 (2000). There need not be either a high degree of similarity between the charged and the uncharged acts or distinctive or unusual features for evidence to be admitted under this theory. *People v Steele*, 283 Mich App 472, 480; 769 NW2d 256 (2009).

In this case, the trial court permitted the evidence of defendant's connection to the 2005 armed robberies as proof of a common plan. In each instance, defendant rented a car then stored in the trunk a mask and dark clothing consistent with what the robber in each case wore. Although there are clear differences between the two cases, such as the 2005 armed robberies involved multiple perpetrators while the robber in the current case acted alone, the cases were sufficiently similar to establish a common scheme or plan. See *Steele*, 283 Mich App at 480. Thus, evidence that defendant was previously accused of being involved in armed robberies in which he rented a car and robbed stores wearing dark clothing and a mask established that

defendant was previously involved in similar misconduct, which is logically relevant to show a common plan or scheme that defendant followed. *Sabin*, 463 Mich at 63.

The third other-acts factor is whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice under MRE 403. MRE 403 "does not prohibit prejudicial evidence; only evidence that is unfairly so." *Crawford*, 458 Mich at 398. This is because evidence offered against a party is naturally prejudicial, "otherwise there would be no point in presenting it." *People v Fisher*, 449 Mich 441, 451; 537 NW2d 577 (1995).

In this case, the 2005 other-acts evidence was highly probative. The evidence of defendant's involvement with the armed robberies in this case was similar to the evidence of defendant's involvement with the 2005 armed robberies. This evidence of a common plan for committing armed robberies, and evidence that that plan was followed in this case, made it more probable that defendant committed the armed robbery in this case. See *Crawford*, 458 Mich at 387. Further, the trial court instructed the jurors that the purpose of the other-acts evidence was only to show a common plan. Jurors are presumed to follow the trial court's instructions. See *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008). Therefore, the trial court's limiting instruction restricted the jury from giving this evidence unfair weight.

Next, defendant challenges the trial court's admission of evidence that he slept while at work. Defendant failed to object to this evidence before or during trial. Therefore, because this issue is unpreserved, *Aldrich*, 246 Mich App at 113, our review is limited to plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To avoid forfeiture, "1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." To affect substantial rights means that "the error affected the outcome of the lower court proceedings." *Id*.

First, defendant argues that the evidence was inadmissible under MRE 404(b). But the prosecution did not admit evidence of defendant's sleeping at work to show that on the night of the robbery, defendant fell asleep at work. Because this evidence was not presented to show that defendant acted in conformity, it is not barred under MRE 404(b). See MRE 404(b)(1).

Next, defendant argues that this evidence was inadmissible because it was irrelevant. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Evidence is relevant if it is material and probative. *Crawford*, 458 Mich at 388. "Materiality is the requirement that the proffered evidence be related to 'any fact that is of consequence' to the action." *Id*. Evidence is probative when it "tends 'to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " *Id*. at 389-390.

Before trial, defendant submitted a notice that he intended to present evidence of an alibi that he was working when the armed robbery occurred. In defense counsel's opening statement, he reiterated several times that defendant's alibi was premised on the fact that he was well supervised at work and would not have been able to leave unnoticed. The prosecution's theory in rebuttal was that defendant was not as closely supervised as he asserted and could therefore leave work unnoticed for as long as necessary to commit the robbery. Thus, defendant's alibi

defense made the question of whether defendant could leave work unnoticed a matter of consequence, and the fact that defendant was not closely supervised while at work was material. *Id*. at 388. Further, if defendant were able to sleep while at work, his doing so tends to show that he was not closely supervised. Because this makes the fact that he could leave unnoticed more probable, evidence of defendant's sleeping at work was also probative and admissible. *Id*. at 389-390.

Defendant next argues that the prosecution presented evidence of defendant's sleeping at work to prove defendant's trait for disregarding work rules and that he acted in conformity with that trait. The record, however, does not indicate that this was character evidence. Rather, as previously explained, the prosecution presented evidence of defendant's sleeping at work to rebut defendant's alibi that he was at work at the time of the robbery.

In defendant's Standard 4 brief,[1] he argues that evidence of the Norton Shores robbery was improperly admitted under MRE 404(b)(1). This argument requires this Court to apply the other-acts framework stated earlier. With respect to the first factor, the prosecution offered evidence of defendant's connection to the 2014 armed robbery to show a common scheme in which defendant and a possible accomplice target Shell gas stations: defendant or his accomplice enters the station and robs it at gun point wearing dark clothing. Defendant and his accomplice then flee in a late model Hyundai Sonata. This is a proper purpose under MRE 404(b)(1).

In regard to the second factor, we see in the record clear similarities between the Norton Shores robbery and the robbery in this case. In both cases, the robber targeted a Shell gas station; the robbery took place in the early morning hours; the robber entered the store and robbed the clerk at gunpoint; the robber dressed in dark clothing, including a black hooded sweatshirt, and the robber was suspected of fleeing in a late model Hyundai Sonata. While there were some dissimilarities between the two robberies, such as the Norton Shores robber also stole cigarettes and carried a backpack, the similarities were sufficient to establish a common plan. *Steele*, 283 Mich App at 480. Because the similarities between the two robberies manifested a common plan to commit armed robberies, details pertaining to the Norton Shores robbery were logically relevant to the armed robbery in this case. See *Sabin*, 463 Mich at 63.

With respect to the third other-acts factor, this Court must determine whether the probative value of the evidence was substantially outweighed by the danger of unfair prejudice under MRE 403. *Knox*, 469 Mich at 509. "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *Crawford*, 458 Mich at 398. Evidence of defendant's connection to the Norton Shores robbery was highly probative because it evidenced a common plan for targeting Shell gas stations to commit armed robberies. Further, defense counsel made clear for the jury that defendant was not charged with the Norton Shores robbery. The trial court also instructed the jury to only consider the evidence as possibly showing a common plan and jurors are presumed

---

[1] See Michigan Supreme Court Administrative Order 2004-6, Standard 4.

-5-

to follow the trial court's instructions. *Unger*, 278 Mich App at 235. As such, there exists no indication that the jury gave the Norton Shores robbery evidence unfair weight.

Defendant argues that no evidence connected him to the Norton Shores robbery. But there was significant circumstantial evidence that connected defendant to this robbery: Muhammad was charged with the Norton Shores robbery after DNA evidenced linked the shoe left at the scene to him; text messages between Muhammad and defendant indicated that the two were planning something involving a weapon in the days leading up to the Norton Shores robbery. Finally, at the time of the robbery defendant was driving a 2013 Hyundai Sonata, and the robber in the Norton Shores robbery fled in a 2010-2014 Hyundai Sonata. Thus, defendant's argument does not apply to whether the evidence was admissible, but to what weight the jury should have given the evidence. "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).

Next, defendant argues that there was insufficient evidence to convict him of armed robbery. A challenge to the sufficiency of the evidence is reviewed de novo. *People v Wolfe*, 440 Mich 508, 513-515; 489 NW2d 748, 751 (1992), amended 441 Mich 1201 (1992). To determine whether the prosecution presented sufficient evidence to sustain a conviction, "a court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *Id*. at 515. But appellate courts are not juries and must not interfere with the jury's role as the sole factfinder based of the jury's determination of the credibility of witnesses and the weight to be given the evidence. *Id*. at 514-515. "[T]he trier of fact, not the appellate court, . . . determine[s] what inferences may be fairly drawn from the evidence and . . . the weight to be accorded those inferences." *Hardiman*, 466 Mich at 428. This review standard applies equally to direct and circumstantial evidence, which may sufficiently prove any element of the crime. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

Here, defendant does not contest that the elements of armed robbery were satisfied. Rather, defendant contends that the prosecution failed to reasonably prove that *he* committed the armed robbery. "[I]t is well settled that identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). The prosecution's theory of the case was that defendant was guilty of the crime either as the principle or as an aider and abettor. Under MCL 767.39, "[e]very person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense." This statute "does not create a distinct crime; rather, it allows an aider and abetter to be convicted of, for example, armed robbery, even though that person did not hold the gun or take the money." *People v Greaux*, 461 Mich 339, 344-345; 604 NW2d 327 (2000).

Sufficient evidence was presented at trial to convict defendant of armed robbery under, at the very least, an aiding and abetting theory. Evidence was presented that defendant rented a 2013 Hyundai Sonata with license plate number 459KXE from July 5, 2014, until July 14, 2014. On July 8, 2014, a vehicle with license plate number 459KXE was observed approximately ¾ of a mile from the Shell station just a few minutes after the station was robbed at gunpoint. The robber of the Shell station was dressed in all black with a hoodie and a black nylon mask. When

the police searched defendant's car, they found a black hoodie and a black do-rag. Defendant had previously been suspected of an armed robbery, and, in that case, when the police stopped defendant and searched his car, they also found clothing that matched the clothing worn by the robber. Defendant was also suspected of being involved in the July 2014 armed robbery in Norton Shores as previously discussed. While defendant is correct that none of this evidence directly places defendant at the scene of the July 8, 2014 armed robbery, "the prosecution need not negate every reasonable theory consistent with the defendant's innocence, but need merely introduce evidence sufficient to convince a reasonable jury in the face of whatever contradictory evidence the defendant may provide." *Hardiman*, 466 Mich at 424 (citation omitted). So, based on the evidence presented in this case, we conclude there was sufficient circumstantial evidence for a rational trier of fact to find defendant guilty beyond a reasonable doubt of, at the very least, aiding and abetting the July 8, 2014 armed robbery. *Wolfe*, 440 Mich at 515.

In his Standard 4 brief, defendant also contends that evidence of his sleeping while at work should not have been admitted because it was unfairly prejudicial. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403.

Whether defendant was closely supervised at work was a crucial factor in this case. Defendant's alibi was premised on his assertion that he was at work and unable to leave for longer than ½ hour without his supervisor noticing. Proof that he was not closely supervised and therefore had more flexibility to leave and return without notice brought his alibi into question. Thus, the evidence was not unfairly prejudicial because it focused on a fact relevant to the case, not on something extraneous. See *Fisher*, 449 Mich at 452 (observing that unfair prejudice under MRE 403 refers to the tendency of proposed evidence to adversely affect the objecting party's position by injecting matters extraneous to the merits of the case, such the jury's bias, sympathy, anger, or shock). Moreover, defendant has failed to establish that this error, if any, was outcome determinative. Consequently, relief would not be available on review for plain error. *Carines*, 460 Mich at 763. Because this evidence was admissible, defendant's argument that counsel was ineffective for failing to object to its admission is also without merit. *Unger*, 278 Mich App at 257 (counsel is not ineffective when failing to assert futile objections).

Defendant next argues that his right to confrontation was violated when Detective Neher testified regarding information about a traffic stop involving defendant that Detective Neher obtained from a deputy with the Ottawa Sheriff's Department. Because defendant failed to object to Detective Neher's testimony regarding his conversation with Deputy Wendt, this issue is unpreserved, and our review is limited to plain error affecting substantial rights. *Carines*, 460 Mich at 762-764; *Aldrich*, 246 Mich App at 113.

The Confrontation Clause is primarily function is to promote reliability in criminal trials al right by permitting an accused to confront and cross-examine witnesses. *People v Nunley*, 491 Mich 686, 697; 821 NW2d 642 (2012). But the protections of the Confrontation Clause apply only to statements that are used as substantive evidence. *People v Fackelman*, 489 Mich 515, 528; 802 NW2d 552, 559 (2011). Thus, the Confrontation Clause does not "bar the use of out-of-court testimonial statements for purposes other than establishing the truth of the matter asserted." *People v Putman*, 309 Mich App 240, 246; 870 NW2d 593 (2015). So, an out-of-

court statement used to show its effect on the hearer is not hearsay and does not violate the Confrontation Clause. See *People v Henry (After Remand)*, 305 Mich App 127, 154; 854 NW2d 114 (2014), and *People v Chambers*, 277 Mich App 1, 11; 742 NW2d 610 (2007).

In this case, Detective Neher offered the information he received from the Ottawa Sheriff's deputy to explain why he proceeded with the investigation in the way that he did, not to prove the truth of the matter asserted. Detective Neher did not testify that defendant and Muhammad were driving to Muskegon to prove that they were going towards the location of the Norton Shores robbery. Rather, it was offered to explain why the detective contacted GRPD; after running their names, Detective Neher saw that most of their contacts and residences were in Grand Rapids, not Muskegon, and Detective Neher was aware of similar robberies that occurred in Grand Rapids. This, in turn, explained why the GRPD ran defendant's plates. When they found that his vehicle was near the site of the July 8 robbery, it triggered the rest of the GRPD's investigation. Accordingly, because Detective Neher's testimony was limited to showing why he proceeded in a certain direction with his investigation, it did not violate the Confrontation Clause. See *Chambers*, 277 Mich App at 10-11; see also *Henry*, 305 Mich App at 154 ("Had [the detective] limited his testimony to an explanation that, on the basis of the information he received from the informant he proceeded in a certain direction with his investigation, it may have been admissible."). As such, to the extent that defendant argues that defense counsel was ineffective for failing to object to the admission of these statements, that argument is also without merit because any objection would have been futile. See *Unger*, 278 Mich App at 257.

Lastly, defendant argues in his Standard 4 brief that trial counsel was ineffective for failing to investigate certain evidence that would have confirmed his alibi defense. Although defendant has preserved the issue by filing a motion for remand in this Court, this Court denied the motion. Consequently, our review is limited to mistakes apparent on the lower court record. See *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

To establish ineffective assistance of counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). A defendant must overcome a strong presumption that counsel employed sound trial strategy. *Id*. at 689; *Trakhtenberg*, 493 Mich at 52. Thus, effective assistance of counsel is presumed, and a defendant bears a heavy burden of proving otherwise. *People v McGhee*, 268 Mich App 600, 625; 709 NW2d 595 (2005).

Defendant first argues that trial counsel was ineffective for failing to investigate and call four witnesses who could have confirmed his alibi. "Failure to make a reasonable investigation can constitute ineffective assistance of counsel." *Id*. at 626. But counsel's "[d]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). "[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Dixon*, 263 Mich App 393, 398; 688

-8-

NW2d 308 (2004). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009).

In this case, defendant argues that defense counsel's failure to investigate and call four witnesses deprived him of his alibi defense because the witnesses could have testified that defendant was working the night of the robbery. But it was uncontested at trial that defendant was at work on the night of the robbery. The prosecution's theory at trial was that defendant left work, committed the robbery, and then returned to work. Therefore, the only way that these witnesses could have provided testimony of a substantial defense was if they could have testified that they were with defendant at the time of the robbery.

Defendant only claims that one of the four witnesses could have confirmed that he was at work at the time of the robbery. According to defendant, he had a conversation with this coworker during his break on the night of the robbery, thereby proving that he did not leave the premises and commit the robbery. But this witness, Shelly Cox, was called and testified at defendant's trial. Specifically, Cox testified that he was unsure whether he had any conversation with defendant on July 8, the night of the robbery. Therefore, based on the record, further testimony from Cox could not have established a substantial defense.

Defendant also argues that defense counsel was ineffective for failing to interview Cox before trial. However, defendant has not provided any evidence, other than his own statements, that defense counsel failed to interview Cox before he testified. Therefore, without more than defendant's assertions, defendant failed to establish that defense counsel was ineffective. See *People v Meissner*, 294 Mich App 438, 460; 812 NW2d 37 (2011) (holding that trial counsel was not ineffective for failing to interview witnesses because defendant provided "nothing beyond his assertions to establish" that the witnesses could have provided different evidence).

Defendant also argues that defense counsel was ineffective for failing to investigate security footage from his workplace on the night of the robbery. However, Detective DeVries testified at defendant's preliminary examination that the surveillance videos did not provide any insight into the investigation. Defendant has presented no evidence other than his assertions that the surveillance video would have proved that he was at his work at the time of the robbery. Without anything to substantiate defendant's assertions, defendant cannot establish counsel's decisions regarding what evidence to present were not sound trial strategy, *Trakhtenberg*, 493 Mich at 52, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy, *Davis*, 250 Mich App at 368. As such, because defendant provided nothing beyond his assertions regarding the surveillance video, defense counsel was not ineffective in failing to present this evidence. See *Meissner*, 294 Mich App at 460.

We affirm.

/s/ Jane M. Beckering
/s/ Jane E. Markey
/s/ Douglas B. Shapiro