*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TOD KEVIN HOUTHOOFD,

        Defendant-Appellant.

UNPUBLISHED
January 21, 2021

No. 349886
Saginaw Circuit Court
LC No. 05-025865-FH

Before: GADOLA, P.J., and BORRELLO and M. J. KELLY, JJ.

PER CURIAM.

On remand, the trial court resentenced defendant to a prison term of 360 to 600 months for his conviction of solicitation to commit murder, MCL 750.157b. Defendant appeals as of right, raising numerous issues related to his resentencing. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

In 2006, defendant was convicted of solicitation to commit murder, MCL 750.157b, witness intimidation, MCL 750.122, and obtaining property valued over $100 by false pretenses, MCL 750.218. This case has been before this Court on six previous occasions. A comprehensive recitation of the facts can be found in the opinions of this Court and the Supreme Court. See *People v Houthoofd*, unpublished per curiam opinion of the Court of Appeals, issued February 3, 2009 (Docket No. 269505), rev'd in part and remanded 487 Mich 568 (2010) (*Houthoofd I*); *People v Houthoofd (On Remand)*, unpublished per curiam opinion of the Court of Appeals, issued December 2, 2010 (Docket No. 269505) (*Houthoofd II*); *People v Houthoofd*, unpublished per curiam opinion of the Court of Appeals, issued February 18, 2014 (Docket No. 312977) (*Houthoofd III*); *People v Houthoofd*, unpublished per curiam opinion of the Court of Appeals, issued May 14, 2015 (Docket No. 322592) (*Houthoofd IV*); *People v Houthoofd*, unpublished per curiam opinion of the Court of Appeals, issued September 14, 2017 (Docket No. 332323) (*Houthoofd V*); *People v Houthoofd (After Remand)*, unpublished per curiam opinion of the Court of Appeals, issued March 15, 2018 (Docket No. 332323), (*Houthoofd VI*). Most recently, this Court vacated defendant's sentence for solicitation to commit murder and remanded for

-1-

resentencing because the trial court erred by scoring offense variable (OV) 14 at 10 points, which resulted in a reduction in the recommended sentencing range under the advisory guidelines from 81 to 135 months to 51 to 85 months, and there was no indication that the trial court would have imposed the same departure sentence absent the scoring error. On remand, in July 2019, the trial court departed upward from the advisory guideline range of 51 to 85 months to sentence defendant to a prison term of 360 to 600 months for his solicitation to commit murder conviction.

## II. CONSTITUTIONAL ARGUMENTS

Defendant argues that "the 13-year delay" between his conviction and this appeal deprived him of due process, equal protection of the law, and the right to a speedy appeal, and that the delay mandates dismissal of his conviction of solicitation of murder. We review the preserved claims of constitutional error de novo. *People v McPherson*, 263 Mich App 124, 131; 687 NW2d 370 (2004).

Defendant's argument was addressed by the trial court thusly:

It's unquestionable that this has been a lengthy appellate process in this particular matter; however, the defendant would concede that there's no Michigan law supporting his position that dismissal is an appropriate remedy to cure delay in appeals. The federal cases cited by defendant also do not entitle him to the relief his seeks.

First: The *Burkett*[1] case cited by the defendant was recently abrogated by the case of *Betterman v Montana*, 136 Supreme Court 1609, 2016 case, where the U.S. Supreme Court held that Sixth Amendment's speed trial guarantee does not apply once a defendant has been found guilty at trial or has pleaded guilty to criminal charges.

Moreover, this case is factually distinguishable from all the federal cases cited by defendant involving a delay in the appellate process. Unlike the *Turner*[2] and in the *Ward*[3] cases cited by the defendant, he has not been effectively denied his right of appeal in this case; to the contrary, he's litigated multiple appeals in the 13 years. He has filed most of the appeals since his conviction, and the Court does not find that the defendant has been denied due process or equal protection where he's filed and adjudicated several appeals in the 13 years since his conviction. And I will, therefore, deny his motion to dismiss at this time.

From the outset, we note that defendant's argument that he has suffered a "13-year delay" in the adjudication of his appeal is disingenuous. As we indicated above, since defendant's

---

[1] *Burkett v Cunningham*, 826 F2d 1208 (CA 3, 1987), abrogated by *Betterman v Montana*, ___ US ___; 136 S Ct 1609; 194 L Ed 2d 723 (2016).

[2] *Turner v Bagley*, 401 F3d 718 (CA 6, 2005).

[3] *Ward v Wolfenbarger*, 340 F Supp 2d 773 (ED Mich, 2004).

convictions, numerous appeals brought by defendant have been heard and adjudicated by this Court and our Supreme Court. Since his sentencing in 2006, defendant has appealed to this Court on six previous occasions and has received six opinions from this Court and one opinion from the Supreme Court. He has also had applications for leave to appeal reviewed and denied by the Supreme Court. He has received timely appellate review of the merits of his challenges to the 2006 conviction of solicitation to murder, as well as of the sentence imposed. And, even presuming defendant has somehow suffered harm, the remedy for dilatory review is review itself. See *People v Missouri*, 100 Mich App 310, 324-325; 299 NW2d 346 (1980), in which this Court rejected the defendants' complaint that the absence of a prompt appeal deprived them of due process, stating:

> Defendants contend that their convictions should be reversed because of a nearly 18–month delay between appointment of appellate counsel and preparation of the trial transcript, five months after this Court ordered that it be prepared. As a result of the lengthy and excessive delay defendants claim to have been irreparably prejudiced, involving continuous incarceration since their sentencing, denial of their freedom of movement and association, lost opportunities for meaningful employment, and disruption of their family life.

> We do not dispute the fact that defendants have suffered as a result of a delayed consideration of their appeal. However, there is no allegation that the merits of the appeal itself have been affected by this delay. Delay in appellate review does not automatically entitle a defendant to a new trial. The remedy for dilatory review is review itself. As our full consideration of the merits of defendants' appeal negates any claim of prejudice arising out of the delay in reaching this Court, we conclude that defendants were not denied due process of law. [Emphasis added.]

See also *People v Gorka*, 381 Mich 515, 520; 164 NW2d 30 (1969) (holding that despite the delays in perfecting an appeal of right in the Court of Appeals, the defendant had a full review of his case in the Supreme Court and was not entitled to a new trial). Here, defendant had a timely first appeal as of right, has had full appellate review of his case, and has not shown a due process or equal protection violation. Accordingly, defendant is not entitled to relief on this issue.

## III. EX POST FACTO ARGUMENT

Defendant argues that retroactive application of *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), violates due process and the prohibition against ex post facto laws. Defendant made the same argument in *Houthoofd V*, unpub op at 2-5. Although the ex post facto claim was not preserved in that case, this Court thoroughly addressed the issue and held that "*Lockridge* applies retroactively to cases pending on direct appeal at the time *Lockridge* was decided, and thus the trial court properly applied *Lockridge* when resentencing defendant in March of 2016." *Id*. at 4. This Court also rejected defendant's argument that any facts used to determine a departure sentence, except those facts admitted by defendant or those involving prior convictions, must be found by a jury. *Id*. at 4-5. In *Houthoofd VI*, unpub op at 2 n 3, defendant again raised the arguments. This Court noted that the majority of the issues raised by defendant on appeal related to issues decided in *Houthoofd V*, including issues related to the applicable burden of proof at

sentencing, as well as the applicability of *Lockridge* and whether substantial and compelling reasons were required for a departure sentence. This Court found that following remand, the material facts relating to these issues remained the same, and, therefore, this Court held that the law-of-the-case doctrine[4] precluded a differing ruling on these legal issues. Because there has not been a material change to the facts or law[5] following remand which would warrant further consideration of these issues, we again conclude that the law-of-the-case doctrine precludes a different ruling on these legal issues in this appeal. *People v Fisher*, 449 Mich 441, 444; 537 NW2d 577 (1995).

## IV. PRESENTENCE INVESTIGATION REPORT

Defendant argues that the presentence investigation report (PSIR) contained inaccuracies and that he is entitled to have the inaccurate information stricken from the report, or to an evidentiary hearing on contested matters. Defendant raised the same objections to the PSIR before his March 2018 resentencing that he is raising here. In *Houthoofd VI*, unpub op at 2 n 3, we concluded that defendant's arguments relating to the issue of the trial court's consideration of information in the PSIR and the necessity of an evidentiary hearing were precluded by the law-of-the-case-doctrine because we had considered the issues in *Houthoofd V*. The law-of-the-case doctrine again precludes consideration of this issue. *Fisher*, 449 Mich at 444.

## V. REASONABLENESS OF THE SENTENCE

Defendant presents a number of arguments in challenging the sentence imposed. Generally, he challenges the factors considered by the court in departing from the sentencing guidelines range, the extent of the departure, and the reasonableness of the sentence.

---

[4] The law-of-the-case doctrine provides that an appellate court's decision regarding a particular issue is binding on courts of equal or subordinate jurisdiction during subsequent proceedings in the same case. *People v Fisher*, 449 Mich 441, 444; 537 NW2d 577 (1995); *People v Herrera*, 204 Mich App 333, 340; 514 NW2d 543 (1994). "Normally, the law of the case doctrine applies without regard to the correctness of the prior determination." *Id*. (citation and quotation marks omitted). The doctrine only applies if the facts in the case "remain materially the same." *People v Kozyra*, 219 Mich App 422, 433; 556 NW2d 512 (1996). The doctrine does not apply when there has been an intervening change in the pertinent law upon which the appellate court relied. See *People v Spinks*, 206 Mich App 488, 491; 522 NW2d 875 (1994). Additionally, the doctrine only applies to "issues actually decided, either implicitly or explicitly, in the prior appeal." *Grievance Administrator v Lopatin*, 462 Mich 235, 260; 612 NW2d 120 (2000).

[5] In *People v Odom*, 327 Mich App 297, 310; 933 NW2d 719 (2019), this Court held that retroactive application of the advisory sentencing guidelines to the defendant did not violate the prohibition against ex post facto laws when the application resulted in an increase in the defendant's sentence compared to the sentence originally imposed. And, in *People v Schrauben*, 314 Mich App 181, 195; 886 NW2d 173 (2016), this Court held that facts used to justify an upward departure from the guidelines did not need to be found beyond a reasonable doubt by a jury because, under *Lockridge*, an intermediate sanction is no longer mandated.

## A. STANDARD OF REVIEW

We review for reasonableness "[a] sentence that departs from the applicable guidelines range." *Lockridge*, 498 Mich at 392. "[T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the 'principle of proportionality' set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), 'which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017). Factual findings related to a departure must be supported by a preponderance of the evidence and are reviewed for clear error. *Lawhorn*, 320 Mich App at 208-209.

## B. ANALYSIS

In *Lockridge*, 498 Mich 358, our Supreme Court held that the sentencing guidelines are advisory only, but "remain a highly relevant consideration in a trial court's exercise of sentencing discretion," and sentencing courts must consider them when sentencing a defendant. The key test is not whether a sentence departs from or adheres to the guidelines range, but whether the sentence is proportionate to the seriousness of the matter. *Steanhouse*, 500 Mich at 472. "The premise of our system of criminal justice is that, everything else being equal, the more egregious the offense, and the more recidivist the criminal, the greater the punishment." *People v Babcock*, 469 Mich 247, 263; 666 NW2d 231 (2003). Sentencing judges are "entitled to depart from the guidelines if the recommended ranges are considered an inadequate reflection of the proportional seriousness of the matter at hand." *Milbourn*, 435 Mich at 661. "Where a defendant's actions are so egregious that standard guidelines scoring methods simply fail to reflect their severity, an upward departure from the guidelines range may be warranted." *People v Granderson*, 212 Mich App 673, 680; 538 NW2d 471 (1995). In *People v Steanhouse*, 313 Mich App 1, 46; 880 NW2d 297 (2015), aff'd in part, rev'd in part on other grounds 500 Mich 453 (2017), this Court indicated:

> Factors previously considered by Michigan courts under the proportionality standard included, among others, (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [Citations omitted.]

"[A] trial court must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (quotation marks and citations omitted). A trial court imposing a departure sentence must explain how that sentence is individualized to the specific defendant and to the circumstances surrounding the specific offense. *People v Smith*, 482 Mich 292, 311; 754 NW2d 284 (2008). When deciding whether to depart from the advisory guidelines range, a trial court must sufficiently articulate the reasons or justification for the departure. See *Steanhouse*, 500 Mich at 470. Due process bars sentencing courts from finding by a preponderance

of the evidence that a defendant engaged in conduct of which he was acquitted. *Beck*, 504 Mich at 629.

Initially, defendant contends that a number of the facts relied on by the trial court in departing from the guidelines were neither substantial and compelling nor objective and verifiable. However, "the prior requirement for 'objective and verifiable' reasons for departing from the guidelines was tied to the requirement for 'substantial and compelling' reasons for departure, and courts are no longer required to articulate 'substantial and compelling' reasons to impose a sentence above the advisory guidelines range." See *People v Carlson*, ___ Mich ___, ___; ___ NW2d ___ (2020) (Docket No. 344674); slip op at 6 (citations omitted).

Defendant first argues that the trial court erred by "increasing" the scores of OVs 6 and 19 "without giving defense counsel an opportunity to respond," and rescored multiple prior record variables (PRV), to justify its departure. Defendant argues that "a determination should be made as to whether it was reasonable for the trial court to rescore the guidelines to justify its departure." However, the the trial court did not rescore the guidelines. Rather, the trial court stated facts not taken into consideration by the guidelines and approximated what the guidelines would have been had those facts been considered.

With respect to OV 6, the guidelines in effect at the time of the offense did not allow the court to score points for premediated intent to kill. The trial court noted that the guidelines were amended in 2002 to allow the scoring of points for intent to kill and that, if defendant had committed this offense after the 2002 amendment, a score of 50 points would have been assessed.[6] The court explained that it could not score any points for OV 6, but that it found that defendant's premeditated intent to kill was a relevant factor in formulating a reasonable sentence. Because the guidelines did not direct the court to score points for intent to kill under OV 6 for solicitation to commit murder at the time of the offense, intent to kill was not a factor not taken into consideration by the guidelines and, therefore, was a factor properly considered by the court.[7]

With respect to OV 19, MCL 777.49, the trial court scored 10 points for interfering with or attempting to interfere with the administration of justice. The trial court found that a score of 10 points did not adequately account for defendant's efforts to subvert justice and avoid prosecution. The trial court found that soliciting the murder of a complaining witness in order to

---

[6] OV 6, MCL 777.36, as of April 22, 2002, can be scored for solicitation of murder. See 2002 PA 143, which provided, in part: " For all crimes against a person, score offense variables 1, 2, 3, 4, 7, 8, 9, 10, 11, 12, 13, 14, 19, and 20. Score offense variables 5 and 6 for homicide, attempted homicide, conspiracy or solicitation to commit a homicide, or assault with intent to commit murder."

[7] Defendant argues the trial court disregarded the legislative guidelines by considering defendant's intent to kill and thereby violated the separation of powers doctrine. Although defendant cites general caselaw regarding separation of powers, he has not provided any clear argument or any authority in support of his contention that the failure to follow the legislative sentencing guidelines supports the doctrine. This argument is considered abandoned. *People v Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004).

avoid prosecution as "as serious as threatening the security of a penal institution or a court," which would allow the assessment of 25 points. Following our review of the trial court's reasoning, we conclude that the trial court did not clearly err in finding that OV 19 did not adequately account for defendant's conduct.

Defendant also asserts in one sentence that the trial court improperly considered uncharged allegations against defendant. Defendant does not develop this argument. Nonetheless, the trial court found that the PRVs did not account for defendant's conduct and his unprosecuted acts of violence. The trial court found:

> The prior record variables, as scored, also do not adequately and accurately reflect the background of this defendant. As scored, the PRVs suggest that the defendant has basically been a model citizen prior to his involvement in the murder-for-hire scheme.
>
> Conversely, the record evidence and the reasonable inferences arising from that evidence shows that defendant had been targeting and victimiz[ing] people that he perceived as having wronged him in some way since at least 1994.
>
> At trial, evidence was presented to show that in 2001, defendant's co-worker, Jody Meagher, was responsible for placing him on disciplinary suspension from his employment at General Motors. Shortly after that, someone fired a round of buckshot into Meagher's Bay County home.
>
> In the same evening as the shooting at Meagher's home, the defendant was found trespassing at the General Motors property. At the time, the defendant had two firearms and ammunition inside his vehicle. This record evidence and the reasonable inferences arising from that evidence supports a finding by a preponderance of the evidence that the defendant was responsible for the shooting at the Meagher home.
>
> At trial, evidence was also presented to show that the defendant was under investigation for acts of violence perpetrated against his former boss, Robert Griffith, who supervised the defendant at a General Motors plant in Toledo, Ohio. Shortly after Griffith terminated the defendant in 1994, Griffith was assaulted inside of his home. Later, after defendant was reinstated and began working for General Motors in Bay City, a pipe bomb exploded in Griffith's home.
>
> Defendant's commission of unprosecuted acts of violence in his . . . past is not reflected in the sentencing guidelines and is also reason to depart upward from the guidelines' recommended range.

Sentencing courts are free to consider uncharged conduct in crafting their sentences. *Beck*, 504 Mich at 626-627. A preponderance of the evidence supported the trial court's finding that the PRVs did not adequately reflect defendant's history of violence.

Defendant also asserts that the trial court improperly considered defendant's lack of remorse when departing from the guidelines. However, a sentencing court may consider evidence

of lack of remorse at sentencing. *People v Houston*, 448 Mich 312, 323; 532 NW2d 508 (1995); *Carlson*, ___ Mich App at ___; slip op at 6. Remorse is a proper consideration which bears on the potential for rehabilitation. *People v Wesley*, 428 Mich 708, 711; 411 NW2d 159 (1987).[8] Here, the trial court specifically found that defendant's inability to express remorse after multiple resentencing hearings indicated that he had not been rehabilitated and continued to pose a threat to society. Also, with respect to rehabilitation, the trial court referred to defendant's six prison misconducts, three of which were incurred between the December 2017 resentencing and the resentencing in this case. The trial court found that defendant's "recent involvement in misconduct suggest that his behavior in prison has worsened since he was last before the Court for resentencing. This, too, suggests that rehabilitation have [sic] yet to occur." The trial court's findings are not clearly erroneous and are supported by a preponderance of the evidence.

Defendant also asserts that the trial court inappropriately considered defendant's refusal to accept responsibility for his actions in this case. It is true that "[a] court cannot base its sentence even in part on a defendant's refusal to admit guilt," and resentencing is required if "it is apparent that the court erroneously considered the defendant's failure to admit guilt, as indicated by action such as asking the defendant to admit his guilt or offering him a lesser sentence if he did." *People Conley*, 270 Mich App 301, 314; 715 NW2d 377 (2006) (quotation marks and citations omitted). However, in this case, the trial court made an isolated statement, "Defendant's lack of remorse and *inability to recognize the wrongfulness of his actions* is another factor that's not reflected in the sentencing guidelines." This statement did not indicate that the trial court based its sentence in part on defendant's refusal to admit guilt or that he would have received a different sentence if he had done so. Rather, the statement was made in the trial court's discussion of his potential for rehabilitation.

Defendant additionally argues that the trial erred by considering defendant's dangerousness as a departure factor. In *Houthoofd II*, unpub op at 7, this Court held, before *Lockridge*, that objective and verifiable factors underlying the court's conclusion that a defendant poses a danger to others are "an acceptable justification for an upward departure." This Court said:

> Here, the trial court supported its conclusion that defendant is dangerous with objective and verifiable factors from the record. Defendant was not just a danger to society generally; he was a threat toward specific persons who he perceived as having wronged him. The court noted defendant's pattern of retributive acts toward Meagher and Griffith over employment disciplinary matters. Also, like the defendant in *Horn*,[9] defendant was in custody when he threatened Detective VanHorn and solicited Wurtzel's murder in an attempt to thwart prosecution. The court cited objective and verifiable evidence from which it reasonably inferred that defendant remains a danger. These facts were external to the court's mind and were capable of being confirmed. Accordingly, defendant's

---

[8] Indeed, defendant recognizes that caselaw has held that trial courts can properly consider lack of remorse, but he contends that the caselaw has been wrongly decided.

[9] *People v Horn*, 279 Mich App 31, 43; 755 NW2d 212 (2008).

dangerousness was an acceptable factor to consider in departing from the guidelines, and was a substantial and compelling reason to do so. [*Id*. at 8.]

Here, the trial court's finding that defendant remained a danger was premised on the same facts that this Court found to be sufficient to allow the trial court to reasonably infer that defendant remained a danger. The trial court found:

> Although substantial and compelling analysis no longer applies after *Lockridge*, the unique danger the defendant poses to specific, identifiable individuals is not considered by the guidelines and remains an appropriate factor to be considered under the proportionality standard.
>
> Here, there is record evidence indicating that defendant is not just a danger to society in general, but a danger toward at least four specific individuals. The record evidence shows an escalating pattern of retaliation and violence by defendant towards Robert Griffith and Jody Meagher over employment matters.
>
> In addition, defendant was willing to have the victim in this case, Mr. Wurtzel, killed in order to evade prosecution in the tractor/false pretenses case. Defendant or someone acting at his behest also repeatedly threatened the safety and well-being of Detective VanHorn, the investigating officer in the tractor/false pretenses case.
>
> There is anticipatory harm based on defendant's recurring and escalating acts of violence toward the aforementioned individuals, which is objective and verifiable. The Court finds that the defendant's profound dangerousness to these specific individuals is a unique characteristic that warrants an upward departure from the sentencing guidelines as currently scored.

The trial court did not clearly err by finding that defendant's dangerousness was an acceptable factor to consider in departing from the guidelines.

Next, defendant argues that the trial court abused its discretion by imposing a sentence that exceeded the guidelines because the sentence is unreasonable and disproportionate. He argues that the trial court violated the principle of proportionality when it sentenced him to a minimum sentence of 360 months, which is 275 months higher than the top end of the sentencing guidelines range. Defendant contends that the reasons provided by the trial court for exceeding the sentencing guidelines range do not support the extent of the departure and that the sentence imposed is unreasonable.

Review of the record reveals that the trial court provided a detailed explanation for the sentence it imposed, and based its departure on factors not adequately considered by the guidelines, including defendant's prison misconducts, his lack of remorse, his dangerousness, and his potential for rehabilitation. The trial court provided numerous reasons for the sentence, including: (1) defendant exhibited an escalating pattern of retaliation and violence toward certain specific individuals and had gone so far as to solicit murder to avoid prosecution in a false pretenses case; (2) OV 6 did not account for defendant's premeditated intent to kill; (3) OV 19 was insufficient to account for the "extreme length the defendant went to in his quest to subvert and avoid justice; and

(4) the prior record variables did not adequately account for the evidence that "defendant has been targeting and victimizing people that he perceived to have wronged him in some way since at least 1994." On this last point, the trial court stated that defendant had shot at a person who was responsible for placing him on a work suspension and had assaulted a person who had terminated him from employment. The trial court concluded that the guidelines, as scored, were "woefully inadequate to punish defendant for the severity of his conduct in this case, to provide for his rehabilitation, and to protect [people who] had been victimized by defendant's increasingly brazen and frightening actions." The trial court found that the seriousness of the offense could not be "overstated." The trial court said that defendant solicited murder of another man in order to avoid prosecution for obtaining a tractor by false pretenses, and that the record evidence indicated that this was not defendant's first attempt to get rid of another person who "dared to hold him accountable for his own actions." The trial court concluded its findings by stating that in sentencing defendant to a sentence that constituted a "substantial departure" from the guidelines range, the court also focused on the seriousness of the offender and found that defendant "is an extremely dangerous individual" and that "the sentence to be imposed and the extent of the departure from the applicable guidelines range was necessary to protect those that have already been victimized by the defendant from further acts of retribution and physical violence."

In addition, the trial court also articulated an explanation for the extent of the departure independent of the reasons stated for the departure. The recommended minimum sentence guidelines range was 51 to 85 months, which was OV level I and PRV level D. The trial court translated the facts not considered by the guidelines and approximated where the guidelines would have been had the unaccounted-for facts been considered. The trial court determined that the unaccounted-for facts were the equivalent of a score in OV level V and PRV level F, a range of 225 to 375 months. MCL 777.62. The trial court's statement was made to facilitate appellate review of the *extent* of the departure. By translating the departure factors into an OV and PRV score, the trial court was able to explain why the sentence it imposed was more proportionate to the offense and the offender than a different sentence would have been. *Dixon-Bey*, 321 Mich App at 524-525. The trial court explained the facts unaccounted for by the guidelines to a hypothetical OV score and then imposed a sentence within the guidelines range calculated using those otherwise unaccounted-for facts. The trial court properly considered appropriate factors in crafting a sentence that was outside the guidelines range, including the seriousness of the offense and factors not considered by the guidelines. The trial court recognized that defendant was an exceedingly dangerous person who posed a threat to the physical safety of others and who had failed to show that he had been rehabilitated such that the threat had been lessened. Under these circumstances, the departure sentence was reasonable and proportionate, and defendant is not entitled to resentencing.[10]

---

[10] Defendant also argues that if this Court remands for resentencing, the resentencing should take place before a different judge. This Court has repeatedly denied this request, and as this Court has previously held, "nothing which occurred during the most recent remand leads us to believe that Judge Darnell Jackson should be disqualified under the court rules, MCR 2.003(C), or the due process concerns set forth in *Caperton v AT Massey Coal Co, Inc*, 556 US 868; 129 S Ct 2252; 173 L Ed 2d 1208 (2009)." *Houthoofd VI*, unpub op at 5.

## VI. JURISDICTION

Defendant argues that Saginaw County was not the proper venue for the solicitation of murder charge and that he is entitled to reversal of his conviction and sentence. Our Supreme Court has already ruled in this case that venue was not proper in Saginaw County for defendant's solicitation of murder charge, but that the venue error was harmless. *Houthoofd*, 487 Mich at 593-594. The law-of-the-case doctrine precludes a different ruling on this legal issue. *Fisher*, 449 Mich at 444. Further, contrary to defendant's assertion, the Supreme Court's holding that the nonconstitutional harmless error test applies was not overruled by *People v McBurrows*, 504 Mich 308, 324; 934 NW2d 748 (2019). *McBurrows* explained that "the Legislature is free to adjust statutorily" the default rule—that venue is proper in the county where a crime is committed—because the default rule is not a constitutional right. *McBurrows*, 504 Mich at 324. Accordingly, this argument is without merit.

Affirmed.

/s/ Michael F. Gadola
/s/ Stephen L. Borrello
/s/ Michael J. Kelly